**PENNSYLVANIA CO. FOR INSURANCES ON LIVES AND GRANTING ANNUITIES v. UNITED STATES.**

**No. 1154.**

District Court, E. D. Pennsylvania.

Nov. 7, 1942.

Saul, Ewing, Remick & Harrison and Francis H. Bohlen, Jr., all of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., and Gerald A. Gleeson, U. S. Atty., both of Philadelphia, Pa., and E. E. Angevine, Sp. Asst. to Atty. Gen., for defendant.

GANEY, District Judge.

This is an action for moneys had and received under Section 24(20) of the Judicial Code as amended by Section 1122(c) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 121, 28 U.S.C.A. § 41(20). A judgment is prayed for in the sum of $5,999.51 with interest at 6% from April 28, 1937 less a credit for refund of $19.77.

By agreement of the parties the facts have been stipulated and those pertinent are as follows:

The Pennsylvania Company for Insurances on Lives and Granting Annuities is a bank and trust company organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business in the City of Philadelphia, Pennsylvania, hereinafter referred to as the "trustee", becoming trustee under an agreement and declaration of trust dated April 2, 1930, as supplemented and amended, with Independence Shares Corporation, a Delaware corporation, therein called the "depositor", and hereinafter designated as such. The said agreement and declaration of trust as supplemented and amended will hereinafter be referred to as "Trust Agreement". Pursuant to the terms of the Trust Agreement the depositor delivered the first unit of 1,000 Independence Trust Shares on May 24, 1930 to the trustee which it had purchased with its own funds consisting of one share of stock of each of 50 companies specifically set forth in a statement attached to the Trust Agreement, as well as $526.40 representing dividends paid or declared on the stock deposited from and after March 1, 1930. Against this deposit the trustee authenticated and delivered to the depositor trust share certificates for the one unit of 1,000 trust shares. From time to time after the creation of this first unit, additional units of 1,000 trust shares each were added, so that as of September 27, 1930 there had been created 2,953 units of 1,000 trust shares each. At the time of the filing of the complaint 2,009 units of 1,000 trust shares each were outstanding, and at the start of the fiscal year beginning March 1, 1936, the year for which the trustee here seeks to recover taxes paid, there were 741 units of 1,000 trust shares each outstanding, the balance having in the meantime been converted in accordance with the Trust Agreement, which made provision for the holder of trust share certificates converting them with the trustee whenever he wished to terminate his relationship with the trust, which will be referred to later. During the fiscal year, March 1, 1936 to February 28, 1937, 195 additional units were added so that at the end of the year, 936 units were outstanding, none having been con-

verted. Until the year 1932 the amount of the trust share certificates sold by the depositor were sold by it at retail to members of the public, but since then most of them have been sold by the depositor to the trustee under certain periodic payment plans. The trust share certificates are in registered form and transferable by the registered holders. As the trust share certificates are transferred from time to time, new trust share certificates are issued holders in the name of the proper transferees. The certificates for the shares of stock of the companies constituting the stock units are held by the trustee, registered in its name, and it receives from time to time all cash dividends paid and declared on the deposited stocks, and also all stock dividends, rights and like distributions, paid or distributed on the deposited stocks. The trustee is required under the Trust Agreement to sell and has sold all stock dividends, rights and other distributions, on the deposited stock received by it, and has credited the proceeds to a "Distribution Account". The cash dividends received by the trustee are first credited to an Income Account, and then credited to the said "Distribution Account". In the event of mergers or consolidations of any of the companies whose stock is held in the stock units, or in the event that the stock of the said companies is split up, the Trust Agreement requires the necessary exchange to be made. If more than one share per stock unit results, the trustee is required to sell the additional shares. If less than one share per stock unit results, the trustee at the direction of the depositor is required (1) to retain the resulting fraction as part of each stock unit; (2) to purchase with funds in the Distribution Account the fractions necessary to make up one full share per stock unit; or (3) to sell the stock and eliminate it from the trust; the proceeds of any sales to be credited to the said Distribution Account. No fractional shares have ever been retained in the trust nor has the trustee ever been authorized by the depositor to make any purchases from funds in the Distribution Account to make up one full share per stock unit. The depositor has the power under the Trust Agreement to instruct the trustee to sell all of the stock of any of the companies held in the stock units, if the particular company fails to pay a usual dividend upon its stock or it if liquidated voluntarily or otherwise, or if the depositor should re-

ceive information that in its opinion would warrant the conclusion that the stock of any such company may or will become substantially impaired in value. The proceeds of any such sales are likewise to be credited to the Distribution Account. In the fiscal year during which the taxes involved in this particular proceeding was sought, the stock unit consisted of one share each of the stock of 42 companies. The Trust Agreement further provided that the composition of all stock units deposited with the trustee at any one time is to be alike, and the composition of stock units have in fact always been alike, except in the instances of three stock split ups, where the stock was sold and eliminated from the trust and also where the depositor eliminated some thirteen companies under the power granted to it authorizing it to sell, when any company failed to pay a regular dividend, etc., as indicated above. Under the Trust Agreement the holder of trust share certificates may surrender them to the trustee and upon payment of transfer charges and taxes is entitled to receive: (1) transfer of certificates for one share each of the companies then constituting a stock unit; and (2) a sum in cash equivalent to the proportionate share of the Distribution Account attributable to one unit, at which time the trust share certificates so surrendered are cancelled and the unit eliminated from the trust. Holders of less than one unit of 1,000 trust shares may surrender them to the trustee and unless the depositor exercises an option to purchase within two days, such holder is entitled to receive, after paying transfer charges and taxes, a certain redemption price or value calculated in the Trust Agreement. In addition to the cash dividends, proceeds of sale of stock dividends, rights and other properties received on the deposited stock, and the proceeds of sale of fractions and eliminated stock, the trustee has from time to time credited to the Distribution Account the cash paid to it from time to time by the depositor for the purpose of equalizing dividends upon the creation of units. The trustee has paid from time to time, out of funds in the Distribution Account semiannually on April 1 and October 1 of each year to the registered holders of trust share certificates, funds in the Distribution Account less any reserve for taxes, the depositor's semiannual administration fee and such amount as may be necessary to adjust the distribution to an even cent per trust

share. The trustee never purchased any of the deposited stocks; all of them have been purchased by the depositor with its own funds, nor did it select the stock originally chosen comprising the stock unit, or take any part in the elimination of stocks, excepting to follow the instructions given to it by the depositor. The duties of the trustee under the Trust Agreement have been carried out under the supervision of one of its vice presidents as an incident of the general business of the trustee without the employment or designation of anyone for that sole purpose; the amount of the depositor's administration fee, originally fixed not to be in excess of 1½¢ semiannually for each trust share outstanding, was reduced to 1¢ semiannually for each trust share outstanding. The trust department of the trustee keeps an asset ledger, an income account, a distribution account, and an unclaimed dividend account, and whatever other accounts or records are requisite for the proper operation of the trust. The holders of trust share certificates have no voting rights, nor is there any provision in the Trust Agreement for meetings of the holders, and none has ever been held. The trust created under the Trust Agreement has likewise no directors, officers, or employees, nor has it any office, stationery, seal or minute book.

The question of law here involved is whether an investment trust of the fixed or deposited unit type is properly classified as an association and hence taxable as a corporation for federal tax purposes.

## Conclusions of Law

The declaration of trust here involved dated April 2, 1930 with Independence Shares Corporation is not an association, and therefore not within the term "corporation" as defined in Sec. 1001(a) (2) of the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Code § 3797(a) (3), and the ruling of the Commissioner of Internal Revenue is reversed and the taxpayer awarded the judgment prayed for.

## Opinion

■ In determining whether a particular trust agreement shall be construed as a trust or as an association, it is fundamental that we examine what powers and duties are lodged with the trust. In this case, what powers and duties were given to the depositor, to the trustee, to the cestuis que trust, the holders of the trust share

certificates? Since no two trust agreements are identical, but differ on various factual bases, the most that can be hoped for from adjudicated cases, is to determine the controlling principles of law laid down and attempt to apply them to the facts of the particular case; and so it is for this reason that all of the pertinent portions of the declaration of trust between the trustee and depositor are set forth.

The Supreme Court in Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, makes an elaborate review of the authorities and while certain statements taken out of the context of an opinion do not always reveal the true attitude of the court, nevertheless I feel that it is a fair conclusion from a careful reading of the Morrissey case to say that the court distinguished it from the traditional type of trust by a finding that the facts disclosed a purpose and intention to carry on a business enterprise and so to share in its gains, and unless such an intention to engage in a business enterprise is present mere resemblance to corporate forms is not controlling. In Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L.Ed. 573, 2 A. L.R. 1601, the trust was engaged in the operation of a mill, and in Morrissey v. Com'r, supra, it was concerned with the operation of a golf club, while in Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949, it was concerned with the operation of a real estate trust, and here the court stated at page 157 of 265 U.S., at page 467 of 44 S.Ct., 68 L.Ed. 949: "We think the word 'association' as used in the Act clearly includes 'Massachusetts Trusts' such as those herein involved, having quasi-corporate organizations under which they are engaged in carrying on business enterprises". The approach therefore it seems to me, is to attempt to determine, whether from a consideration of all the powers lodged with the trust, the object is to hold and conserve particular property with incidental powers such as in the traditional type of trust, or whether the intention is to provide a medium for the conduct of a business and to share its gains and losses.

The government lays great stress on some of the attributes of the quasi form of organization mentioned by the court in Morrissey v. Commissioner, supra. One of these is the provision for succession. However, in the instant case, it is not like a corporation since the beneficiaries have no right to select a successor trustee and the depositor has the right to select

one, only if the trustee is relieved or discharged by a competent court and the successor must then be a bank or trust company incorporated under the laws of the United States of America or the Commonwealth of Pennsylvania. Central management is another. An examination of the trust reveals, in my opinion, no such central management as was contemplated by the court in the Morrissey case, supra, or central management as is understood generally in the ordinary corporation. Continuity of organization is another. However, this is an attribute of the trust as well as of a corporation and therefore mere continuity of organization as such is not, in my opinion, sufficient to bring it within the terms of the Morrissey case, supra. The transfer of beneficial interests without effect on the continuity of the enterprise is another. But here again it is a distinguishing feature more applicable between partnerships and corporations than between trusts and corporations. The large number of participants is another. However, as was held in Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273, the fact that there were a large number of participants is immaterial, and does not affect the question of whether there is a trust or an association. Limitation of personal liability of participants is another. Here there is no provision in the Trust Agreement relieving the trust share holders of any of the liability of the trust and it therefore can in no wise be controlling.

Accordingly, I am persuaded to the point of view that the instant case conforms itself most nearly to the case of Commissioner v. Chase National Bank, 2 Cir., 122 F.2d 540, as well as that of Commissioner v. Buckley, 9 Cir., 128 F.2d 124, and not as contended for by the government more nearly to Commissioner v. North American Bond Trust, 2 Cir., 122 F.2d 545. In the case of Commissioner v. North American Bond Trust, supra, the court there distinguishes the case from that of Commissioner v. Chase National Bank, supra, largely on the ground that in its case the depositor was not confined to the same bonds for each unit and the depositor was permitted to make up new units composed of different bonds from the preceding units as new money was available, thus reducing the interest of certificate holders in the bonds that they had then owned, and substituted in the place of the interest so taken, an interest in new bonds. This was not the case in Commissioner v. Chase National Bank, supra, nor is it the situation in the instant case, since the depositor has no power to vary the stock in different units as an examination of the instrument reveals that the only way the property held in trust could be affected by the depositor was its authorization to weed out whatever became unsound for investment and retain the remainder, this power in the instant case not being nearly as broad as that detailed authority given depositor in Commissioner v. Chase National Bank, supra. Accordingly, the only investment discretion found here is the limited power of elimination, granted to the depositor, the agreement not even containing powers of an ordinary trust under will or deed, authorizing the trustee to invest and reinvest the corpus of the trust.

Here I feel there was no power exercised by either the trustee or depositor or their combination beyond those which are necessary incidents to the preservation of trust property, the collection of income therefrom and its distribution to the holders of trust shares, and I do not find that the instrument provided a medium which could be construed as set up for the conduct of a business and the sharing of its gains and losses.

I therefore find that the Independence Trust Shares trust is not an association either in purpose or activity, and judgment should be in favor of the taxpayer.