**PENNSYLVANIA CO. FOR INSURANCES ON LIVES AND GRANTING ANNUITIES et al. v. UNITED STATES.**

No. 1536.

District Court, E. D. Pennsylvania.

Nov. 7, 1942.

Saul, Ewing, Remick & Harrison and Francis H. Bohlen, Jr., all of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., and Gerald A. Gleeson, U. S. Atty., both of Philadelphia, Pa., and E. E. Angevine, Sp. Asst. to Atty. Gen., for defendant.

GANEY, District Judge.

This is a suit to recover $7,911.30 with interest on varying amounts from August 26, 1939 together with reasonable costs and disbursements representing income and capital stock tax returns paid the Collector of Internal Revenue by reason of a ruling of the Commissioner of Internal Revenue that the trust herein created should be classified as an association for federal tax purposes.

I feel the pertinent facts of the case at bar are essentially the same as those in the case of Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee under Agreement and Declaration of Trust dated April 2, 1930 with Independence Shares Corporation v. United States, D.C., 48 F.Supp. 969, handed down at the same time, with some additional changes, which do not make for such a sufficient distinction, as to make the difference taxwise.

The trustee here, the Pennsylvania Company for Insurances on Lives and Granting Annuities, on December 5, 1930 received from the depositor the first unit of 15,000 Deposited Bank Shares, Series A, and along with the unit of Deposited Stock, which it had purchased with its own funds, $33,000 in cash for a surplus fund and $594 representing dividends pair or declared on the deposited stock from September 1, 1930. Against this deposit the trustee authenticated and delivered to the depositor, Trust Share Certificates for one unit of 15,000 trust shares. At the time of the creation of the first unit of trust shares the unit of deposited stock was composed of a certain number of shares of stock in eighteen New York banks and trust companies. From time to time after the creation of this first unit, additional units were issued, on which occasions the depositor deposited with the trustee as required by Section 4 of Article 1 of the Trust Agreement, a unit of deposited stock as then constituted, likewise purchased with its own funds, an amount in cash equal to all dividends paid or declared on said stock, and an amount in cash equal to the proportional value of the Surplus Fund attributable to one unit. At the time of the issuance of each unit of trust shares the stock certificates for the deposited stock were transferred into the name of the trustee, and from time to time it received all cash dividends upon the deposited stock, which it credited to an Income Account, from which semiannual cash dividends were paid each year. The trustee received all stock dividends, rights and like distributions on the deposited stock which it was required to sell under Section 9 of the Trust Agreement and credited the proceeds of these sales to the Surplus Fund; in the event of. mergers or consolidations of any of the banks or trust companies the trustee was required to make the necessary exchange of stocks and any resulting fractional shares per unit were required to be sold and the proceeds credited to the Surplus Fund. The Trust Share Certificates were in registered form and were transferable by the registered holders on a registry book or record kept at the office of the trustee. At any one time the composition of all units of deposited stock was required by Section 11 of the Trust Agreement to be alike, and the only changes in the composition of said units was the right which the depositor had under Section 20 of the Trust Agreement, under certain circumstances therein specified, to eliminate all of

the stock of any one or more of the banks and trust companies held in the units of deposited stock, and when eliminated and sold the trustee was required to credit the proceeds of the sale to the Surplus Fund. The trustee was also under the requirements of Section 27 of the Trust Agreement to invest the cash in the Surplus Fund in excess of $25,000 in Trust Share Certificates, which fund consisted of (1) the cash for the Surplus Fund deposited upon the creation of units, (2) the proceeds of sale of stock dividends, rights and other like distributions received on the deposited stock, (3) the proceeds of fractional shares of stock per unit resulting from mergers and consolidations, and (4) the proceeds of stock eliminated by the depositor pursuant to Section 20 of the Trust Agreement. The trustee is required to distribute semiannually to the registered holders of Trust Share Certificates a dividend equivalent to 2½% of the number of trust shares held, or if the holder so elects and notifies the trustee, a cash dividend valued in accordance with certain provisions of Section 31 of the Trust Agreement. This distribution was authorized to be made out of the Surplus Fund, and only when there were sufficient trust shares and cash in the Surplus Fund to permit it, and the Trust Share Certificate dividend or the cash equivalent thereof was paid until July 1, 1940, after which there was insufficient trust shares and cash in the Surplus Fund to make distribution. Likewise the trustee was required to make a semiannual cash dividend to the registered holders of Trust Share Certificates derived from the appropriate proportional part of the cash income and other cash income received on the deposited stock. However, no cash dividends were payable to the Trust Shareholders held in the Surplus Fund. The trustee at no time purchased the deposited stock, all of it being purchased by the depositor with its own funds, excepting purchases made by it pursuant to Sections 27 and 30 of the Trust Agreement, covering the purchase of Trust Share Certificates for the Surplus Fund and fractional warrants; neither did it select the stocks originally comprising the unit of deposited stock nor did it take any part in the elimination of stocks except to follow the instructions given to it by the depositor. The trustee received out of the Surplus Fund semiannually Trust Share Certificates for 37½ trust shares per unit outstanding. The trustee has acted under the supervision of one of its vice presidents or one of its trust administrators in its trust department, and has maintained an asset ledger, a Surplus Fund cash account, an Income Account and an Unclaimed Dividend Account. The holders of the Trust Share Certificates have no voting rights and there is no provision made in the agreement for meetings. The trust created under the Trust Agreement has no directors, officers or employees, maintains no office, has no stationery, seal or minute book, nor is any provision made for any capital or surplus.

It seems to me as I have indicated that the factual elements comprising the Trust Agreement fit into the same frame work as that of Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee under Agreement and Declaration of Trust dated April 2, 1930 with Independence Shares Corporation v. United States, in that, with but certain differences, which will be adverted to later, the powers and duties of the depositor, the trustee and the beneficiaries of the trust certificate shareholders are in accordance with the simple strict trust. The facts do not disclose any element of profit or gain, or that which I feel is the controlling rule in Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, that in order to be classified as a corporation for taxation purposes, there must be an engagement of capital in the transaction of business for profit. That case as I construe it can include what the investment broker refers to as a fixed investment trust if it had nothing to do, except collect income from certain shares of stock and distribute it to beneficiaries. As I have indicated there are several factual differences between the instant case and that of Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee under Agreement and Declaration of Trust dated April 2, 1930 with Independence Shares Corporation v. United States, but they are more ornate, than essential, in that they do not change the character of the transaction, but are merely attractive side-lights. I have particular reference to the creation of the Surplus Fund and the payment of trust share certificate dividends, or its equivalent in cash, which features are not to be found in the Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee under Agreement and Declaration of Trust dated April 2, 1930 with Independence Shares Corporation case.

However, these additions are not sufficient to make the trust taxwise.

The powers and duties here of the depositor, trustee and shareholders are, as I have indicated, essentially the same as in Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee under Agreement and Declaration of Trust dated April 2, 1930 with Independence Shares Corporation v. United States, and it is the character of these powers which is determinative of their classification for taxation purposes, and accordingly I feel this type of trust falls within the rule of Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee under Agreement and Declaration of Trust dated April 2, 1930 with Independence Shares Corporation (Independence Trust Shares) v. United States of America and Commissioner v. Chase National Bank, 2 Cir., 122 F.2d 540, and therefore this trust does not fall within the statute upon which the Commissioner relies.

Accordingly, judgment is entered in favor of the plaintiff taxpayer.