SCHROEDER EMPLOYEES THRIFT CLUB, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 80691.   Promulgated October 12, 1937.

*Arthur M. Kracke, Esq.*, for the petitioner.
*Hartford Allen, Esq.*, and *Williard S. Lines, Esq.*, for the respondent.

OPINION.

SMITH: This is a proceeding for the redetermination of deficiencies in income tax for the fiscal years ended October 31, 1923, to October 31, 1933, inclusive, in the aggregate amount of $23,802.46 plus a 25 percent penalty, amounting in the aggregate to $5,950.63, for failure to file returns for those years. The petitioner alleges that the respondent erred in his determination that it was an association taxable as a corporation in each of the taxable years. ·

The facts have been stipulated as follows:

(1) In 1921 a number of the employees of Chris. Schroeder & Son Company and related corporations agreed to pool certain of their assets for the purpose of acquiring various securities and from time to time additional monies were supplied during the operation of the pool which was designated as the "Schroeder Employees Thrift Club." Most of the securities purchased were underwritten by Chris. Schroeder & Son Co., which company financed the issuance of securities which consisted mostly of second mortgages.

(2) Mr. Walter Schroeder was President of Chris. Schroeder & Son Co., and offered his services to assist in the undertaking.

(3) The participants in the "Club" numbered anywhere from thirty at its inception to approximately one hundred at its peak. The number of participants was reduced when participants withdrew their deposits and were increased when new participants joined by making new initial deposits. During the existence of the "Club", Mr. Schroeder and several of his friends and two relatives, as well as friends of some of his employees, joined the said "Club." Chris. Schroeder & Son Co. was also a participant in the "Club." Participation in the "Club" was evidenced by a deposit book in which was recorded from time to time the amounts deposited by the participant, and as funds accumulated, additional stock or securities were acquired. No required amount of deposit was necessary at any time, and the amount paid in could be withdrawn upon reasonable notice at any time.

(4) From 1921 to 1931 the "Club's" funds grew materially, and during all this period of time, at semiannual periods, on April 30th and October 31st, each participant's fund so deposited was credited with amounts designated as interest, and computed at the rate of 7% per annum. This practice began April 30, 1922 and continued to October 31, 1931, after which time no further credits were made. In the fiscal years ended October 31, 1923 and October 31, 1924, credits to participants designated as interest exceeded current earnings of such years by the amounts of $3,297.90 and $211.49, respectively.

(5) Practically all of the securities purchased were underwritten by Chris. Schroeder & Son Co., who sold them to the "Club" at cost, which cost was below the principal amount due, and below the selling price to the public.

(6) During the period of twelve and one-half years from its organization in 1921 the total overhead expenses amounted to $742.32. This did not include any credits to participants designated as interest. The "Club" paid no rent, light or incidental office charges, and paid no salaries of any kind to anyone. The overhead expenses were incurred in the form of transfer taxes, attorneys' fees and incidental expenses. The attorneys' fees were occasioned by the fact that counsel was necessary where securities held by the "Club" became involved in foreclosure proceedings, or in connection with the collection of funds in forced liquidations.

(7) Where it was necessary to bring an action for the recovery of monies in foreclosure proceedings, an assignment was made to the Globe Investment Company, and the latter company proceeded on the part of the "Club" to make the recovery.

(8) The "Club" had no articles, charter, seal, declaration, minutes, by-laws or articles of association of any kind. It had no directors, board of governors, executive committee or committees, of any kind. Mr. Walter Schroeder was the sole acting manager of the "Club," the participants acquiescing in his management. The "Club" held no meetings and passed no resolutions and issued no stock certificates or membership certificates. The participants' interests were evidenced by entries in a memorandum pass book.

(9) Mr. Schroeder, on behalf of the "Club," used the funds deposited from time to time for the purpose of acquiring additional securities.

(10) The books of account and records were kept by employees of Chris. Schroeder & Son Co. without expense to the "Club."

(11) No meetings were held by the participants, and no direction was given by the participants to Mr. Schroeder as to their opinions with regard to the use and disposition of the "Club's" funds, this being left to Mr. Schroeder's discretion.

(12) When stocks or mortgages were purchased, title was taken in the name of Walter Schroeder, and upon the receipt of a certificate of stock, it was

immediately endorsed by him in blank and kept in the vault of Chris. Schroeder & Son Co. with the other securities and cash of the "Club." Mortgages were assigned in blank, but the assignment was not recorded.

(13) The "Club" did not at any time sell to any party other than Chris. Schroeder & Son Co. any securities purchased by the "Club." Losses did result in connection with some securities by reason of forced liquidations, and by reason of the fact that certain stock held by a bank as collateral was sold by bank at a loss. Profits in addition to the interest yield resulted when securities were called or redeemed at or above par. Income was received also in the form of dividends on stock.

(14) At times Chris. Schroeder & Son Co. obligated themselves to outsiders to provide an entire bond issue or all notes issued under a mortgage and if the "Club" had previously acquired a portion of such issue Chris. Schroeder & Son Co. called upon the "Club" to resell such bonds and notes to it. When this was done the "Club" received from Chris. Schroeder & Son Co. the price which the "Club" originally paid for the securities when purchased from Chris. Schroeder & Son Co., except in the following instances wherein the securities were resold at prices other than cost.

| Date Purchased | Date Sold | Resold above Cost | Amount of Security Sold | Unit Cost Price | Unit Sale Price |
|---|---|---|---|---|---|
| 11/12/23 | 8/21/24 | Loraine Bond | $5,000.00 | 98½ | 99½ |
| 2/13/23 | 10/21/24 | Leon Store | 5,000.00 | 95 | 99 |
| 12/15/22 | 8/26/24 | Leon Store | 5,000.00 | 96 | 99¼ |
| 1/12/25 | 8/12/25 | Hotel Wausau | 2,500.00 | 95 | 99 |
| 1/25/28 | 2/13/31 | Schroeder 2nds | 2,000.00 | 98½ | 99 |
| 2/18/28 | 2/13/31 | Schroeder 2nds | 6,500.00 | 98½ | 99 |
| 2/18/28 | 1/2/31 | Schroeder 2nds | 500.00 | 98½ | 99 |
| 2/18/28 | 3/12/32 | Schroeder 2nds | 14,500.00 | 98½ | 99 |
| 2/18/28 | 7/25/32 | Schroeder 2nds | 15,500.00 | 98½ | 99 |
| | | *Resold below Cost* | | | |
| 5/23/24 | 12/1/25 | Victoria Bonds | 3,000.00 | 97 | 95 |

(15) Other securities purchased from Chris. Schroeder & Son Co. were at times redeemed at par or called at a price specified by the securities, the "Club" receiving the call price when it held any called securities or par when the security was redeemed.

(16) There is attached hereto and designated as Schedule A and made a part hereof a list showing all securities resold by the "Club" to Chris. Schroeder & Son Co. and also securities held by the "Club" which were redeemed by the obligor or maker. The schedule shows the date and name of the various securities when resold, redeemed, called or liquidated as well as the price received by the "Club" in each instance.

(17) The financial condition of the "Club" is shown by a statement attached hereto and made a part hereof and designated as Schedule B.

(18) The cash deposits of the "Club" were made with the First Wisconsin National Bank in the name of "Schroeder Employees Thrift Club." Funds were withdrawn from this account by check. The drawer was indicated as "Schroeder Employees Thrift Club" signed and countersigned by any two out of three designated participants.

(19) The Schroeder Employees Thrift Club filed no income tax returns for fiscal years ended October 31, 1922 to October 31, 1933, inclusive.

(20) The amounts stated in the deficiency notice as gross income, including interest, dividends and profits on sales and/or redemptions, are mathematically correct. The amounts stated in the deficiency notice as losses, expenses,

interest and other deductions are mathematically correct, if the Board determines that the "Club" is an association taxable as a corporation. The amounts stated in the deficiency notice as interest expense include all interest paid to others than participants of the "Club," but do not include any part of the amounts credited or paid semi-annually to participants and designated as interest.

The amounts so credited or paid to participants were as follows:

| Year | Amount | Year | Amount |
|------|--------|------|--------|
| 1922 | $54.73 | 1928 | $25,512.36 |
| 1923 | 7,786.22 | 1929 | 30,308.87 |
| 1924 | 10,478.61 | 1930 | 33,076.03 |
| 1925 | 13,485.01 | 1931 | 34,813.69 |
| 1926 | 17,490.36 | 1932 | 874.22 |
| 1927 | 21,114.75 | | |

(21) It is further agreed that in the event that the Board should find that the petitioner is a trust, not taxable as an association, then there is undistributed net income taxable to the trust as an entity as follows:

| Year ended October 31 | Net Income | Year ended October 31 | Net Income |
|------|--------|------|--------|
| 1923 | None | 1929 | $4,597.28 |
| 1924 | None | 1930 | 2,984.38 |
| 1925 | $1,498.56 | 1931 | 5,716.02 |
| 1926 | 900.37 | 1932 | 18,875.25 |
| 1927 | 1,106.97 | 1933 | 3,384.08 |
| 1928 | 208.73 | | |

The balance sheets of the organization at the close of the fiscal years ended in 1931, 1932, and 1933 show as follows:

| | Year ending October 31 | | |
|---|---|---|---|
| | 1931 | 1932 | 1933 |
| **ASSETS** | | | |
| Cash | $842.29 | $676.02 | $6.39 |
| Notes receivable | 3,000.00 | 66,000.00 | |
| Bonds, stocks and mortgages | 682,934.51 | 557,517.95 | 588,152.39 |
| | 686,776.80 | 624,193.97 | 588,158.78 |
| **LIABILITIES** | | | |
| Notes payable | $130,500.00 | $119,500.00 | $115,636.00 |
| Accounts payable | | | 1,750.00 |
| Unearned discount | 31,386.75 | 28,675.00 | 27,295.00 |
| Deposits | 510,524.26 | 442,777.93 | 406,852.66 |
| Undivided profits | 14,365.79 | 33,241.04 | 36,625.12 |
| | 686,776.80 | 624,193.97 | 558,158.78 |

The respondent has determined that the petitioner in each of the taxable years involved was an association taxable as a corporation, and that, since the petitioner did not file income tax returns as required by law, it is subject to the delinquency penalty of 25 percent for each of such years.

What constitutes an "association" within the meaning of the applicable taxing acts has received full consideration by the Supreme Court in *Morrissey* v. *Commissioner*, 296 U. S. 344; *Swanson* v.

*Commissioner*, 296 U. S. 362; *Helvering* v. *Combs*, 296 U. S. 365; *Helvering* v. *Coleman-Gilbert Associates*, 296 U. S. 369; *Lewis & Co.* v. *Commissioner*, 301 U. S. 385. See also *Brooklyn Trust Co.* v. *Commissioner*, 80 Fed. (2d) 865; certiorari denied, 298 U. S. 659; *Bert* v. *Helvering*, 92 Fed. (2d) 491; affirming 34 B. T. A. 805. In *Morrissey* v. *Commissioner*, *supra*, and the three related cases cited therewith above, the Supreme Court laid down certain tests by which associations, as that term is used in the statutes, are to be identified. The organizations there under consideration were all held to be associations taxable as corporations. In the *Morrissey* case the Court said:

"Association" implies associates. It implies the entering into a joint enterprise, and, as the applicable regulation imports, an enterprise for the transaction of business. This is not the characteristic of an ordinary trust—whether created by will, deed or declaration—by which particular property is conveyed to a trustee or is to be held by the settlor, on specified trusts, for the benefit of named or described persons. * * * But the nature and purpose of the cooperative undertaking will differentiate it from an ordinary trust. In what are called "business trusts," the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains.

The petitioner here was such a "business trust", providing a medium for the conduct of an investment business and the sharing of its gains among the investors.

There can be no doubt that the petitioner, through its manager, Walter Schroeder, was conducting an investment business for profit. The manager here stood in substantially the same relationship to the investors as a trustee.

A distinction between associations, such as that involved in the *Morrissey* case, and ordinary trusts or principal and agent relationships was drawn in *Lewis & Co.* v. *Commissioner*, *supra*. The Supreme Court there said:

The question recently has received full consideration in *Morrissey* v. *Commissioner*, 296 U. S. 344 [56 S. Ct. 289, 80 L. Ed 263, 16 Am. Fed. Tax Rep. 1274], and three other cases which immediately follow in the same volume. [*Swanson* v. *Commissioner*, 296 U. S. 362; *Helvering* v. *Combs*, 296 U. S. 365; *Helvering* v. *Coleman-Gilbert Associates*, 296 U. S. 369]. The trust reviewed in the *Morrissey* case was essentially unlike that now under consideration. There, the trust was a medium for the carrying on of a business enterprise by the trustees and participation in the profits by numerous beneficiaries whose interests were represented by transferable share certificates, thus permitting the introduction of new participants without affecting the continuity of the plan. The certificates represented both preferred and common shares. We pointed out that the corporate analogy was evidenced by centralized control, continuity and limited liability, as well as by the issue of transferable certificates; and we said (p. 356) that the word "association" implies associates. "It implies the entering into a joint enterprise, and, as the applicable [departmental] regulation imports, an enterprise for the transaction of business. This is not

the characteristic of an ordinary trust—whether created by will, deed, or declaration—by which particular property is conveyed to a trustee or is to be held by the settlor, on specified trusts, for the benefit of named or described persons. Such beneficiaries do not ordinarily, and as mere *cestuis que trustent*, plan a common effort or enter into a combination for the conduct of a business enterprise."

In *Brooklyn Trust Co.* v. *Commissioner*, *supra*, where an investment trust was held to be an association taxable as a corporation the court said:

In *Ittleson* v. *Anderson* (67 F. (2d) 323) [13 Am. Fed. Tax Rep. 311] [C. C. A. 2], we held that the determination of the question of whether an enterprise nominally a trust was an association turned on the degree of the trustees' activity in the conduct of a business, and not on the formal resemblance to a corporate set-up. We said that when the trustee of an estate consisting of securities engages in considerable business activity and is trading those securities and loans and invests the proceeds so that he is in reality conducting an investment business for profits, then the estate is in business and is taxable as an association. * * *

The facts in the instant case are quite similar to those in *Bert* v. *Helvering*, *supra*, where the court held, affirming the Board, that a syndicate or trust formed by a group of employees of a corporation to trade in securities as a business enterprise under the management of a single trustee was an association taxable as a corporation. The court there said:

Applying these tests here, we find from the facts stated a group of individuals organized to carry on a business enterprise for profit; continuity of existence; centralized management; title to the property in a single trustee who is charged with the conduct of the enterprise in the same manner as directors of a corporation; and provision for the transfer of beneficial interests and the introduction thereby of new parties. * * *

Here, also, was a business enterprise, conducted for profit; continuity of existence; centralized management; and title to the property taken in the name of a single trustee or manager. It is not clear whether the interests of the participants were transferable, but in any event the participants could withdraw their funds at any time and others could enter, accomplishing the same result.

We are of the opinion that the petitioner was an association taxable as a corporation in each of the taxable years under consideration.

The petitioner urges, in the event that the Board should determine that it is an association taxable as a corporation, that the amounts credited or paid to the participants as interest during the taxable years 1922 to 1931, inclusive, should be deducted from its gross income as interest payments. The respondent has determined that these amounts were distributions in the nature of dividends. The stipulated facts do not support the petitioner's contentions. Begin-

ning in April 1922 and continuing through October 1931, the fund of each of the participants was credited semiannually on April 30 and October 31 with an amount designated as interest computed at the rate of 7 percent on such fund. The credits so made exceeded current earnings in the years 1923 and 1924. No such credits were made after 1931.

The statutes authorize the deduction from gross income of all interest paid or accrued within the taxable year "on indebtedness." (See section 23 (b), Revenue Act of 1932, and corresponding sections of prior acts .) There is nothing in the stipulated facts to show that the funds of the participants in the possession of the petitioner constituted an indebtedness of the petitioner. There was no relationship of debtor and creditor between the participants and the petitioner or its manager. The only reasonable inference to be drawn from the stipulated facts is that the credits or distributions made to the participants represented profits, or anticipated profits, of the business. It is not explained why, if these amounts constituted interest, no such credits were made after October 1931.

The action of the respondent in disallowing the deduction of the amounts in question from gross income is sustained.

The petitioner being required by law to file corporate income tax returns for the taxable years involved, and having failed to do so, the assessment of the 25 percent delinquency penalty, which is mandatory in such circumstances, is sustained. *Edmonds* v. *Commissioner*, 90 Fed. (2d) 14.

Reviewed by the Board.

*Judgment will be entered for the respondent.*