Anna B. Negus et al. [1] v. Commissioner. Negus v. Commissioner
Docket Nos. 22251, 22283, 22290, 22312, 22340, 22341.
United States Tax Court
1953 Tax Ct. Memo LEXIS 344; 12 T.C.M. (CCH) 243; T.C.M. (RIA) 53075; March 10, 1953
*344 1. Statute of limitations. - Held, that the notices of transferee liability were timely. 2. Trust: Association taxable as a corporation. - Held, that the trust involved herein was a liquidating trust and not an association taxable as a corporation. 3. Income of trust: Distribution. - Held, income of the trust was distributable within the discretion of the trustees and not currently. R. Bruce Jones, Esq., for the petitioners. Ralph V. Bradbury, Jr. Esq., for the respondent. TIETJENS *345 Memorandum Findings of Fact and Opinion TIETJENS, Judge: These proceedings, consolidated for hearing and opinion, involve respondent's determination of the liability of each petitioner as a transferee of the assets of a trust, Ponce De Leon Groves, Fort Pierce, Florida, for deficiencies in the amounts of $1,280.72 income tax, $4,020.98 declared-value excess profits tax, and $20,161.02 excess profits tax for the fiscal year ended October 31, 1944. The petitioners allege that they are transferees of the assets of a trust, Ponce De Leon Groves. The assignments of error raise the following questions: "(1) Whether the respondent's determination of the deficiencies against each petitioner as a transferee, is barred by the statute of limitations; "(2) Whether the trust, Ponce De Leon Groves was an association taxable as a corporation for the year ended October 31, 1944, and if so did respondent err (a) In determining that it was subject to declared-value excess profits tax and excess profits tax liability, (b) In failing to reduce the amount of petitioners' transferee liability by the taxes paid by them individually on distributions received from the trust; "(3) If not *346 an association taxable as a corporation, whether all the income of the trust was distributable so that it had no tax liability for the year ended October 31, 1944, and the income tax alleged to have been paid by the trust in the amount of $1,061.08 for that year constitutes an overpayment to which petitioners as transferees are entitled; and "(4) Whether respondent erred in not granting or allowing petitioners due process, or equitable protest of the deficiency, or a hearing before a conferee or the technical staff." The parties have stipulated a portion of the facts, embracing numerous documents, and the stipulated facts are included herein by reference. Findings of Fact The stipulated facts are so found. Petitioner Anna B. Negus is a resident of Fort Pierce, Florida, and filed her individual income tax returns with the collector of internal revenue, Jacksonville, Florida. She is the widow of C. R. Negus who died November 8, 1943, a resident of Fort Pierce, Florida, and she is the duly qualified executrix of the Estate of C. R. Negus, a petitioner herein, for which income tax returns were filed with the collector of internal revenue for the district of Florida. Petitioner *347 Stella Preston is a resident of Springfield, Missouri. The petitioners Florence Ludwick, F. M. Ludwick and Eva R. Montgomery are residents of Russell, Pennsylvania. From the time of incorporation in 1913 until liquidation in the latter part of 1943, the Ponce De Leon Groves, a Florida corporation, owned, developed and operated citrus groves at Fort Pierce, Florida. There were four or five original stockholders but through the years as some of them died, the stock ownership became scattered among numerous persons living in various states. The development and operation of the groves and the management of the business was left almost entirely to C. R. Negus. Prior to and at the time of the liquidation of the corporation C. R. Negus was a majority stockholder, president, general manager and a director thereof and his son Willis R. Negus was employed by the corporation as a foreman in the operation of the groves which covered most of the 172 acres of land owned by the corporation. For a number of years Dewey Crawford was the attorney for the corporation and during the last couple of years of its existence he also was the secretary and a director thereof. In September 1943 C. R. Negus *348 had a heart attack and was advised by his physician to curtail his business activities. At that time C. R. Negus and other directors considered it advisable to sell the groves and wind up the affairs of the corporation. They did not deem it wise to attempt a sale of the shares of stock because many holders thereof were scattered throughout the country. Conferences were had with real estate agencies but no firm offers were received. The corporation employed a tax accountant who recommended that all negotiations for sale of the corporate assets be discontinued, that the corporation be liquidated by distribution of its assets in kind to its stockholders, and that the corporation be dissolved. The accountant further recommended that the former stockholders convey the distributed assets to a trust for the purpose of liquidating those assets and distributing the net proceeds of the sale to the former stockholders in proportion to their beneficial interests. The interested persons accepted and acted on the accountant's advice and Dewey Crawford drafted the various papers designed to accomplish the desired results. On October 23, 1943, at a meeting of the board of directors of the corporation, *349 acting with the consent and approval of the owners of a substantial majority of the shares of stock outstanding, there was adopted a resolution to dissolve the corporation and proportionately distribute all of its assets subject to liabilities to its stockholders as a liquidating dividend. That resolution was approved by all of the directors, including C. R. Negus, Anna B. Negus, Willis R. Negus, W. S. Hoskins, and Dewey Crawford. On the same date, a warranty deed was executed in the name of the corporation by its vice-president W. S. Hoskins, transferring all its properties to its 24 severally named stockholders. That deed was delivered but was not recorded. On October 25, 1943, a petition to dissolve the corporation and distribute its assets in kind was filed with the Circuit Court of the Ninth Judicial Circuit of Florida and that Court, after due publication of notice and a hearing, entered an order of dissolution of the corporation on November 9, 1943. A corporation income and declared-value excess profits tax return for 1943, disclosing a total tax liability of $4,597.27 was filed with the collector of internal revenue for the district of Florida, by the Ponce De Leon Groves, *350 Fort Pierce, St. Lucie County, Florida, with the notation thereon, "Corporation Liquidated as of Nov. 9, 1943." On October 25, 1943, a warranty deed, naming individually the several stockholders of the corporation as parties of the first part, but executed by some 21 of the parties in interest, conveyed fee simple title to the property they had received from the corporation, to Anna B. Negus, Willis R. Negus, and Dewey Crawford as "Trustees for the stockholders of Ponce De Leon Groves, a Florida corporation, in proportion to their respective holdings of the capital stock" of that corporation. Further, those trustees were "given full power to manage, encumber, sell and dispose of said property, and any persons dealing with them or a majority of them, are relieved of any responsibility as to disposition of funds by said Trustees." Any two of the trustees had the power to fill any vacancies caused by death or resignation of a trustee. That deed was not recorded. On October 26, 1943, the trustees Anna B. Negus, Willis R. Negus and Dewey Crawford, upon the advice of Dewey Crawford and because they held title to the property, executed a "Declaration of Trust" which reads as follows: *351 "KNOW ALL MEN BY THESE PRESENTS, That, Whereas Ponce De Leon Groves, a Florida corporation transferred and assigned to its stockholders, in proportion of their respective holdings of the capital stock of said corporation, all the real and personal property of said corporation as of October 23rd 1943, and "Whereas said stockholders have deeded, assigned and conveyed said real and personal property to the undersigned, as Trustees for said stockholders, in said proportions, "Now, therefore, in order that said stockholders may be assured and informed as to the powers and duties of said Trustees, the said Trustees do hereby assert and set forth their duties, agreement and rights under said trust, as follows, to-wit: "1. Said Trustees shall hold title to said real and personal property for the use and benefit of said stockholders of record of said Ponce De Leon Groves, as of October 23rd 1943. "2. Said Trustees shall manage said property to the best of their ability for the use and benefit of said stockholders, and shall pay to said stockholders the income therefrom as and when same is proper and for the best interests of said stockholders. "3. Said Trustees shall have the full *352 right and authority to encumber, pledge, sell, develop and manage said real and personal property. "4. In case of a vacancy in said Trustees by death or resignation, the remaining two Trustees are empowered to fill said vacancy. Tax Court Reports In witness whereof said Trustees have hereunto set their hands and affixed their seals, this October 26th 1943." An appraisal of the groves and other trust assets was made as of November 8, 1943. The assets of the trust were recorded in a general ledger under date of November 9, 1943. The trust maintained working papers but no journals. The trust did not maintain a minute book because the trustees had no formal meetings and merely conferred on various occasions. The trust notified the bank of the dissolution of the corporation and opened a trust account with checks to be signed by any one of the three trustees. The trust used the trade name of Ponce De Leon Groves and its office was the office of Dewey Crawford at Sunrise Building, Fort Pierce, Florida. At that time the groves had maturing crops of fruit and Willis R. Negus was employed by the trust on a salary as manager of the groves, to supervise the necessary care, preservation, *353 and operation of the groves. In connection therewith the trust purchased needed equipment at a total cost of $4,300. Pending a sale of the groves and to protect the value thereof, the trees had to be cared for and the fruit picked and marketed. Those operations were incidental to the principal purpose of the trust, namely, to sell all its properties as soon as a satisfactory offer was received and then liquidate. Negotiations for a sale were continued until a sale of all the properties, both land and equipment, was made by warranty deed dated February 1, 1945, for a total sales price of $150,000, partly in deferred payments. On January 15, 1945, a fiduciary income and victory tax return (Form 1041) for the fiscal year beginning November 9, 1943 and ending October 31, 1944, was filed in the name of Ponce De Leon Groves, Anna B. Negus, Willis R. Negus, and Dewey Crawford, Trustees, Fort Pierce, Florida, with the collector of internal revenue for the district of Florida. An amended return was subsequently filed. The returns disclosed that out of income derived from sales of fruit from the operation of the groves, the amount of $26,010 was distributed to the beneficiaries of the trust. *354 The amended return reported that on the remaining undistributed net income of the trust there was a total tax liability of $1,061.08, which was paid. The distribution to the beneficiaries was made on advice of an accountant and because such funds were not considered as necessary for operations pending sale of the properties. A fiduciary income tax return for the fiscal year beginning November 1, 1944 and ending October 31, 1945, was filed in the name of the trust, reporting some income from the sale of fruit and a net loss of $431.24 from the sale of the properties and an income tax liability of $22.14. The fiduciary income tax return for the fiscal year ended October 31, 1946, disclosed that distributions to beneficiaries left no net income taxable to the trust. The fiduciary income tax return for the fiscal year ended October 31, 1947, disclosed distributions to the beneficiaries, no tax liability, and a notation "FINAL RETURN - ASSETS FULLY DISTRIBUTED". All of the above mentioned fiduciary returns showed on the face thereof the same name of the trust, the same trustees, and the same address as shown on the return for the fiscal year 1944. Other than the filing of those *355 returns, no formal notice was given to the respondent as to the existence of the trust. Within three years from the time the trust's original fiduciary return for the fiscal year ended October 31, 1944, was filed on January 15, 1945, a statutory deficiency notice dated January 7, 1948, was sent by registered mail addressed to "Ponce De Leon Groves, Fort Pierce, Florida" in which deficiencies were determined against the trust for the fiscal year 1944 in the amounts involved herein. That notice stated: "It has been determined that the trust of Ponce De Leon Groves is an association taxable as a corporation". The notice of deficiency was delivered to the address of Ponce De Leon Associates, purchaser of the trust properties, and receipted for as follows: "Ponce De Leon Groves, by Wily Smith". Wily Smith had never been employed by the trust, but he delivered the deficiency notice by hand to Willis R. Negus on January 20, 1948. A petition was filed with the Tax Court of the United States under the caption of "Ponce De Leon Groves, a Trust, Anna B. Negus, Willis R. Negus, and Dewey Crawford, as Trustees, and as Partial Individual Beneficiaries". That petition was dismissed by the Tax Court *356 on March 10, 1949, for lack of jurisdiction for the reason that the petition was not filed within 90 days from the date of the mailing of the deficiency notice. The statutory deficiency notice sent by registered mail to each petitioner herein as transferee of the assets of the trust, Ponce De Leon Groves, was dated January 7, 1949, within four years of the date of the filing of the fiduciary return of the trust for the fiscal year ended October 31, 1944. It is stipulated herein that the petitioners are transferees, under section 311, Internal Revenue Code, of the assets of the trust, Ponce De Leon Groves, Fort Pierce, Florida, and are liable jointly and severally at law and in equity as transferees for the payment of any deficiencies determined in this proceeding to be due from the trust for the fiscal year ended October 31, 1944, to the stipulated amounts of cash distributions received by each petitioner in the liquidation of the trust. The trust, Ponce De Leon Groves, was created for the purpose of liquidating its assets through sale thereof and distribution of the proceeds to the beneficiaries and not to engage in the business of operating fruit groves *357 for profit. The operations carried on during the taxable year in question were incidental to and pending liquidation. Opinion In the instant proceedings no issue is raised as to respondent's action in treating the trust, Ponce De Leon Groves as a valid subsisting trust and thus a taxable entity during the taxable fiscal year involved herein. At least for the purposes of these proceedings and regardless of the mechanics employed, the parties are in agreement: that the Ponce De Leon Groves corporation was liquidated by distribution of its assets and liabilities in kind and was duly dissolved by court order on November 9, 1943; that the Ponce De Leon Groves trust acquired the properties formerly owned by the corporation and derived income therefrom during the taxable year; and that the trust sold all its properties on February 1, 1945, and thereafter made cash distributions of all its proceeds to its beneficiaries, including petitioners herein. The issues herein as to the trust involve the extent and amount of its tax liability. The first issue involves petitioners' contention that the respondent's respective determinations against them individually as transferees are barred by *358 the statute of limitations. Briefly, the petitioners take the position that the deficiency notice to the trust, dated January 7, 1948, was improperly addressed and therefore an insufficient notice delivered by hand on January 20, 1948, after the statute had run on or about January 15, 1948, for assessment against the trust and, further, that a barred tax liability of the taxpayer may not be asserted against its transferees, even though admittedly the notice of transferee liability was mailed within four years from the time the transferor's tax return was filed. The facts herein show that the trust (taxpayer) had been completely liquidated by distribution of its assets to its beneficiaries (including petitioners) prior to the mailing of the deficiency notice, dated January 7, 1948, to the trust. In Estate of Arthur T. Marix, 15 T.C. 819, 824, and citing numerous authorities in support thereof, we said: "The basic limitation provisions are set forth in section 275, which is entitled 'Period of Limitation Upon Assessment and Collection.' Subsection (a) of section 275 is captioned 'General Rule'; it requires that assessment be made within 3 years after the return was filed, *359 and adds that 'no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such periods.' It is uncontroverted that where a taxpayer's assets have been disposed of, an additional year is added by section 311 (b) (1) to the foregoing 3-year period of limitation within which the Commissioner may proceed against a transferee. And this is so whether or not the Commissioner has initiated proceedings against the taxpayer-transferor within the basic period." On the first issue herein we hold that the deficiency notices addressed to the petitioners as transferees of the trust, Ponce De Leon Groves, were timely. The respondent is sustained on this issue. The second issue involves the question of whether respondent erred in his determination that the trust, Ponce De Leon Groves, was an association taxable as a corporation for the fiscal year ended October 31, 1944. The respondent contends that the trust acquired the properties and the going business of the corporation and during the taxable year simply continued the operation of the business for profit in the same manner as theretofore conducted by the corporation; that is, the groves *360 were tended, the fruit was picked and marketed, expenses were paid, some equipment was purchased, and part of the profits were distributed pro rata to the beneficiaries. Respondent also contends that the purpose of the trust was to engage in business for profit because the trustees' powers authorized such activity and did not limit them to a program of liquidation. Respondent further contends that the trust afforded the interested parties a unity of ownership, a centralized management, an entity to sue and be sued, a continuity of interest and a limited liability, and that thus the trust closely resembled a corporation. The facts herein surrounding the purpose, the actual operations, and the liquidation of the trust in the instant case disclose that it was wholly dissimilar from the business trusts involved in Morrissey v. Commissioner, 296 U.S. 344; and three other cases decided on the same date, Swanson v. Commissioner, 296 U.S. 362; Helvering v. Coleman-Gilbert Associates, 296 U.S. 369; and Helvering v. Combs, 296 U.S. 365. The principles announced in those cases have been considered in reaching our conclusion but they are not *361 applicable here. Those cases were considered in Helvering v. Washburn, ( Oct. 21, 1938) 99 Fed. (2d) 478, (affirming 36 B.T.A. 1328, Docket 83372, Memo. Opinion Sept. 22, 1937 wherein it was held that a trust formed for purpose of liquidation as soon as circumstances will permit and the carrying on of business is only incidental and necessary for the preservation of the trust property, is not an association taxable as a corporation. The Court pointed out that the transaction of some necessary business is not fatal to a strict trust, tax wise, for the reason that there is scarcely any trust as to which its administration does not necessarily involve the doing of some kind of business. In the instant case we have found that the Ponce De Leon Groves trust was formed for the purpose of liquidating its properties and that the operations during the taxable year were incidental to such liquidating purpose which was immediately carried out. We hold that the trust was not an association taxable as a corporation. On this issue the respondent erred. This conclusion obviates the need for any discussion as to issues 2 (a) and 2 (b). The third issue involves the question *362 of whether all of the income of the Ponce De Leon Groves trust was distributable during the taxable year so that the trust had no income tax liability for that year and the taxes paid by it constitute an overpayment. Neither the warranty deed of the former stockholders of the dissolved corporation, conveying the properties to the trustees, nor the latters' declaration of trust required current distribution of any, much less all of the trust income, to the beneficiaries, but left that matter discretionary with the trustees. We find no merit in this question raised by the petitioners. With respect to the fourth issue involving an alleged lack of due process, etc., we find no facts of record warranting even a discussion thereof. Decision in each proceeding will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Estate of C. R. Negus, Anna B. Negus, Executrix, Docket No 22283; Stella Preston, Docket No. 22290; Florence Ludwick, Docket No. 22312; F. M. Ludwick, Docket No. 22340; and Eva R. Montgomery, Docket No. 22341.↩