## SWANSON ET AL., TRUSTEES, *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 108.   Argued November 21, 22, 1935.—Decided December 16, 1935.

*Mr. Arnold R. Baar* for petitioners.

*Assistant Attorney General Morris,* with whom *Solicitor General Reed, Assistant Attorney General Wideman,* and *Miss Helen R. Carloss* were on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The question presented is whether the income of the "Lake View Land Association" for the years 1925 and 1926 was subject to tax as the income of a trust under § 219 of the Revenue Act of 1926,[1] or as the income of an "association" by virtue of § 2 (a) (2) of that Act.[2] The Circuit Court of Appeals held the taxpayer to be an "association" and affirmed the decision of the Board of Tax Appeals to that effect. 76 F. (2d) 651. This Court granted a writ of certiorari. See *Morrissey* v. *Commissioner, ante,* p. 344.

The material facts as found by the Board of Tax Appeals are as follows: Joseph E. Swanson and Ralph C. Otis, in 1914, acquired a piece of vacant land in the city of Chicago with the view of improving it by the erection of an apartment house, the title being taken by Swanson. An apartment house was built. Subsequently, in 1915, at the suggestion of their attorney, they entered into a trust agreement for the purpose of carrying the title to the property. The trust was designated as the "Lake View Land Association." The first trustees were Ralph C. Otis, Joseph E. Swanson, and Allen G. Mills. Petitioners set forth the following summary of the trust agreement,—taken from the opinion of the Circuit Court of Appeals:

"Under the trust agreement, the trustees were given the complete management and control of the property, to exchange, reconstruct, remodel, sell, or improve at their discretion or to borrow money secured by the property. They were authorized to rent suitable quarters for the transaction of the business of the trust and employ such

[1] 44 Stat. 32.
[2] 44 Stat. 9.

assistants as they required. The agreement provided for the issuance of ' receipts ' to evidence the interests of the beneficiaries, representing 1,000 shares at the par value of $100 each. It was provided that the receipts were evidences of the ownership of personal property and not real estate. They might be transferred by assignment. Originally, one-half of the shares were issued to Otis and one-half to Swanson, who later transferred their interests to their wives, who owned the shares during 1925 and 1926. The agreement provided that the trust could sue and be sued;[3] that neither the trustees nor the beneficiaries should be personally liable, and that all persons dealing with the trustees must look only to the property of the trust; that it should be terminated at the expiration of twenty years after the death of the last survivor of certain named persons or by the trustees in their discretion at any time before the expiration of the twenty years by selling all the property held by them as such and distributing the net proceeds of such sale. The trust had succession and was not terminated by the death of a trustee or beneficiary."

The Court of Appeals also stated that " The trustees of the Lake View Land Association never assembled in formal meetings, never adopted resolutions or took formal action with reference to the affairs of the property, kept no minute book, had no by-laws. They elected no officers and no so-called board of directors."

The compensation of the trustees was to be fixed by themselves but was not to exceed 2½ percent of the gross income of the trust. After making provision for the payment of outstanding claims, the net income was to be divided among the beneficiaries according to their interests, and on the request of any beneficiary the trustees

[3] Petitioners submit that this provision of the agreement should, under the law of Illinois, be taken to imply that the trustees could sue and be sued as individuals, and not " the trust as an entity."

were to render annual accounts. The trust agreement also made provision for a written registry of beneficiaries, who could transfer their interests in a described manner, after having first offered them to the other beneficiaries.

The renting of apartments, the details of management and the distribution of net income, were committed to a firm (of which Joseph E. Swanson was a member) engaged in the business of buying and selling real estate and managing properties. That firm acted under the direction of Ralph C. Otis and Joseph E. Swanson and the "entire affairs of the Lake View Land Association" were at all times in their hands.

Applying the governing principles, as set forth in our opinion in *Morrissey* v. *Commissioner, supra,* we agree with the Court of Appeals that the trust constituted an association and was taxable as such. The limited number of actual beneficiaries did not alter the nature and purpose of the common undertaking. Nor did the fact that the operations of the association did not extend beyond the real property first acquired change the quality of that undertaking.

The judgment is

*Affirmed.*