**SEARS et al. v. HASSETT, Acting Collector of Internal Revenue.**

**SAME v. UNITED STATES.**

Nos. 205, 103.

District Court, D. Massachusetts.

Jan. 26, 1940.

Robert G. Dodge (of Palmer, Dodge, Barstow, Wilkins & Davis), of Boston, Mass., (Harold S. Davis and W. A. Barrows, both of Boston, Mass., on the brief), for plaintiffs.

C. Keefe Hurley, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U. S. Atty., of Boston, Mass., Samuel O. Clark, Asst. Atty. Gen., and Andrew D. Sharpe and Frederic G. Riter, Sp. Assts. to Attorney General, on the brief), for defendants.

SWEENEY, District Judge.

These are two actions in which the plaintiffs seek the recovery of taxes alleged to have been erroneously assessed, collected, and retained. The first action involves the question whether the F. R. Sears Real Estate Trust is an association within the meaning of the Revenue Act of 1936, § 1001, 26 U.S.C.A. § 1696, and the second action involves the further question whether the F. R. Sears Real Estate Trust was "doing business" between July 1, 1932, and June 30, 1936, within the meaning of section 701 of the Revenue Act of 1934, 26 U.S.C.A. § 1358. These cases were consolidated for trial, and will be treated as one.

An agreed statement of facts has been filed which I adopt as my findings of facts under Rule 52 of the Rules of Civil Procedure, 28·U.S.C.A. following section 723c. Additional oral testimony was offered from which additional findings are made as will appear herein.

Briefly, Frederick R. Sears died in 1907, and left certain real estate in equal shares to six children. To the four sons their shares in the property were left outright, but the shares of the two daughters were left in trust for them. Just prior to the formation of the trust, the legal title was held as follows:

One-sixth by each of the four sons of Frederick R. Sears.

One-sixth by the four sons as trustees under the will for the benefit of Mrs. Lovering, a daughter of the testator.

One-twelfth by the four sons as trustees for the benefit of Grace Dabney Wrenn, a great granddaughter.

One-twelfth by two of the sons as trustees under the deed of trust created by Alfred S. Dabney, a grandson.

The announced objective in creating the trust was to centralize the title in trustees who would have the entire ownership, instead of leaving the title in the hands of various individuals whose undivided interests might become still further subdivided. The trust was established on May 16, 1921, and Richard D., Philip S., and Herbert M. Sears were appointed as trustees.

The declaration of trust contained the usual broad powers incidental to trusts of a similar nature. The trust was to continue until twenty years after the death of the survivor of certain persons named in the trust, and transferable receipts showing beneficial interests were issued. The trustees had the power to purchase, hire, or lease additional real estate; had absolute control over, and the power of disposal of, all of the trust property; were authorized to pay dividends, to set up a contingent or sinking fund, and had the power to determine the method of distribution of the property or cash left in the trust at the time of its termination.

At its inception the trust owned six pieces of real estate, four of which were disposed of later, and are not here involved.

On June 10, 1921, the trustees leased the property that now constitutes the only real estate in the trust to the S. S. Kresge Company for a term of fifty years with a renewal option in the lessee for a further period of forty-nine years. Under the terms of the lease, the lessee was to maintain and repair the property, and pay an amount equal to taxes in addition to the stated rental. The trustees employed a managing agent who collected the rents, paid taxes, deducted compensation, set up a reserve to provide for quarterly payments to the trustees, and turned over to the trustees the balance. From these funds, the trustees made deposits semi-annually with the Massachusetts Hospital Life Insurance Company in accordance with a deposit agreement, the purpose of which was to create a fund to amortize the mortgage. In 1936 and 1937 the trustees litigated the question of the right of the Kresge Company to terminate its liability by assignment of the lease, and paid the expenses of litigation.

When the 1935 and 1936 fiduciary returns were filed by the trustees, the Commissioner of Internal Revenue ruled that the trust was taxable as an association within the meaning of section 1001 of the Revenue Act of 1936, and assessed taxes of $15,173.48 and

$18,184.50 respectively for the two years involved. These amounts and interest were paid on April 15, 1938, and, claims for refund having been filed and denied, this action was brought for the recovery of those taxes, with interest.

In addition, the trustees paid capital stock taxes for the years 1933, 1934, 1935, and 1936, after their claims for exemption had been denied by the Commissioner of Internal Revenue. These taxes, with interest, were paid on November 17, 1937, under protest, and, a claim for refund having been filed and denied, the trustees seek in this action to recover the amount paid, with interest.

█ The plaintiffs contend that the Sears Trust is a "pure trust" as distinguished from that type of business trust which the courts include within the meaning of "association" as used in section 1001 of the Revenue Act of 1936, and they point to the announced objective of centralizing the title to the property in the three trustees as determinative of its character. The character and purpose of a trust are to be determined by the trust instrument. See Morrissey v. Commissioner, 296 U.S. 344, 361, 56 S.Ct. 289, 80 L.Ed. 263. In Helvering v. Coleman-Gilbert Ass'n, 296 U.S. 369, 374, 56 S.Ct. 285, 287, 80 L.Ed. 278, where a similar contention was made, the court stated: "The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted."

█ Reference to the broad powers granted to the trustees, and their activities under those powers, discloses that the trust is not of the "pure trust" character formed for the simple purpose of holding property on a specific trust for the benefit of certain persons. It more closely resembles the type disclosed in Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273, and, as in that case, is an association of individuals bound together by a declaration of trust for the purpose of owning, operating, and disposing of property in the same manner that a corporation would engage in the business of owning and operating real estate as a business venture.

In Morrissey v. Commissioner, supra, it was pointed out that an association within the meaning of the Revenue Act was one which impliedly constituted a joint enterprise for the transaction of business. As in Helvering v. Coleman-Gilbert Ass'n, supra, the facts show that the owners were dissatisfied to remain as co-owners, and banded together as associates in the enterprise of owning, operating, and disposing of real estate.

Much is made in the plaintiffs' argument of the fact that the trustees merely collected income and distributed that income to the beneficiaries of the trust, and thus came within the literal definition of a so-called "pure trust". It is true that the trustees did little of the actual detail work usually incident to the ownership and management of such real estate. This naturally followed, not from a lack of power to do those things, but, because those duties and detail work had either been delegated to a managing agent or assumed by the lessee.

█ The remaining question is whether this trust was "carrying on or doing business" during the years for which the capital stock taxes were assessed under section 701 of the Revenue Act of 1934, 26 U.S.C.A. § 1358. I have found that the trust was organized as a business venture to own, operate, and dispose of real estate. In each of the years involved the activities of the trust were about the same. Through the trustees or their agents, the trust was carrying on the business of owning and operating a real estate venture. Income was collected, bills paid, reserves set up, and profits distributed to the beneficiaries. Apparently all the things necessary for the conduct of the business were done. See Edwards v. Chile Copper Co., 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678.

I therefore conclude that the F. R. Sears Real Estate Trust was an association within the meaning of the taxing statute, and that it was "carrying on or doing business" during the years for which it paid capital stock taxes.

Judgment may be entered for the defendants, with costs.