## COMMISSIONER OF INTERNAL REVENUE v. BUCKLEY et al.

### No. 9933.

Circuit Court of Appeals, Ninth Circuit.

May 8, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Michael H. Cardozo, IV, and Alvin J. Rockwell, Sp. Assts. to Atty. Gen., for petitioner.

Adolphus E. Graupner and Louis Janin, both of San Francisco, Cal., for respondent.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The underlying question here is whether or not a certain investment trust was an association which, for tax purposes, should be treated as a corporation.

The question arises in this way: Respondents, whom for convenience we will call the taxpayer, owned certificates or shares of Deposited Insurance Shares, Series A, an entity created by an agreement and declaration of trust between Bank and Insurance Shares, Inc., called the depositor, and The Pennsylvania Company for Insurance on Lives and Granting Annuities, called the trustee. In 1936, in line with the privilege granted in the trust agreement, the taxpayer surrendered the certificates held by him and in return received from the trustee a total of 6 "units" of the underlying stocks, consisting of shares of stock of 16 insurance companies. In this transaction he realized a gain over the cost of his certificates. The problem for determination is whether the gain is taxable as a liquidating dividend under § 115(c) and (i) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, pages 868, 871, or whether the transaction was a sale or exchange of a capital asset in which the amount of the taxable gain is limited by § 117 of that Act.

The facts are stipulated. Under the terms of the agreement creating Deposited Insurance Shares, Series A, the depositor was authorized to issue and sell 4,000 trust share certificates for each unit of stock deposited with the trustee. The stock unit originally consisted of specified numbers of shares of stock in 29 named insurance corporations, plus $11,600 in cash. The composition of stock units could be changed only through reorganizations, liquidations, and similar transactions affecting the constituent corporations, or in case the value of the stock of a constituent company should be so impaired that the depositor determined that such stock should no longer be held in the portfolio. The depositor was authorized at any time to deposit with the trustee additional units identical in composition with the units then held. All stock in deposited units was to stand in the name of the trustee, but the depositor had the right to require the trustee to give proxies for voting such stock. Holders of certificates had no voting or other similar privileges with respect to the deposited stock, and no voting rights

otherwise. The trustee and the depositor, which received fees for their services, were relieved of liability for all acts except willful malfeasance or gross negligence.

Distributions made by constituent corporations in cash were distributable semiannually, after deduction of taxes and like charges. The trust agreement provided for the creation of a surplus fund to consist of the cash deposited with each stock unit and all certificates of Deposited Insurance Shares acquired by the trustee in the course of operation. Certificates held in the surplus fund were distributable semiannually as dividends if there were sufficient of them to meet designated requirements. The proceeds of sales of underlying stocks determined by the depositor to be undesirable were placed in the surplus fund, as were the proceeds of sales of stock dividends or rights. Cash in the surplus fund in excess of $25,000 must be, and less than that amount might be, invested in trust share certificates. The trust was to terminate in 1955, 25 years after its creation, but earlier termination could occur if no units of stock remained on deposit. The holder of 4,000 certificates or shares could surrender them at any time and receive in exchange an entire unit of the underlying securities, plus cash equivalent to the proportionate share of the surplus fund allocable to one unit. The holder of less than 4,000 certificates could at any time surrender them to the trustee and receive in exchange cash equivalent to their then value. All surrendered certificates or shares had to be cancelled by the trustee. There were directions providing for the method of evaluating the certificates. The depositor reserved the option to purchase from certificate holders surrendered certificates in groups of less than 4,000, upon payment to the trustee of the amount payable to the surrendering certificate holder under the terms of the agreement.

There was no authority to purchase or substitute the stock of corporations other than those included in the original deposit. The original certificates listed 29 insurance companies, stock in which was held in the portfolio, but by 1935 the stock of 13 of these companies had been eliminated. As of the end of 1935 the market value of the stocks held was close to $10,000,000, and the cash held by the trustee amounted to about $226,000. As of the same time there were approximately 4,500 holders of trust certificates. The certificates were registered and were not listed on any stock exchange, but they were freely transferable and were sold by dealers throughout the country. The continuity of the arrangement was not affected in any way by the death of the certificate holder.

In his income tax return for the year 1936, the taxpayer reported 60% of the gain resulting from the exchange of his certificates for the underlying securities. The Commissioner asserted a deficiency on the ground that the gain was taxable at 100%, contending that the entity was an association taxable as a corporation and that the exchange constituted the receipt of a distribution in partial liquidation of the corporation. On proceedings for redetermination the Board of Tax Appeals held with the taxpayer.

We are told that the Securities and Exchange Commission has classified this entity as an investment trust of the fixed, open-end variety. It belongs in the same category as the investment trust involved in Commissioner v. Chase Nat. Bank, 2 Cir., 122 F.2d 540, 543. The court there thought that "the trust property was to be held for investment and not to be used as capital in the transaction of business for profit like a corporation organized for such a purpose." It agreed with the Board of Tax Appeals that the arrangement contained no provision for the exercise by the depositor or the trustee, or the two combined, of "any powers beyond those which are necessary incidents to the preservation of trust property, the collection of income therefrom and its distribution to the holders of trust shares." Hence it concluded that the trusts were strict trusts, not classifiable as associations.

The Commissioner did not seek certiorari in the Chase Nat. Bank case although he claims the decision was wrong. His fundamental thesis is that for tax purposes all investment trusts should be classified as corporations. If the Commissioner is correct in this, it would seem that the courts have been expending much useless labor on the subject. See particularly the discussion of Chief Justice Hughes in Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263. There is no important difference between the trust before us and the ones dealt with in Commissioner v. Chase Nat. Bank, supra; and, since we are by no means satisfied that that case was wrongly decided, we are

126

constrained to follow it in the interest of desirable uniformity.

Affirmed.

HANEY, Circuit Judge (dissenting).

Upon the statement of fact contained in the majority opinion, I am unable to distinguish the investment trust here involved from the class of trusts defined in Morrissey v. Commissioner, 296 U.S. 344, 359, 360, 56 S.Ct. 289, 296, 80 L.Ed. 263, as being "sufficiently analogous to corporate organization to justify the conclusion that Congress intended that the income of the enterprise should be taxed in the same manner as that of corporations."

All the attributes described by Chief Justice Hughes in the Morrissey case, supra, pages 359, 360 of 296 U.S., 56 S.Ct. 289, 80 L.Ed. 263, are found in the instant case. I cannot agree with the technical refinements of the majority opinion in Commissioner v. Chase Nat. Bank, 2 Cir., 122 F.2d 540, relied upon by the majority here. I think the reasoning of the dissenting opinion in that case is in accord with the rule laid down in the Morrissey case, supra.

In my opinion we should reverse the decision of the Board of Tax Appeals.