**PENNSYLVANIA CO. FOR INSURANCES ON LIVES AND GRANTING ANNUITIES v. UNITED STATES (two cases).**

Nos. 8219, 8220.

Circuit Court of Appeals, Third Circuit.

Argued May 17, 1943.

Decided Nov. 16, 1943.

Francis H. Bohlen, Jr., of Philadelphia, Pa., (Saul, Ewing, Remick & Harrison, of Philadelphia, Pa., on the brief), for appellant.

Carlton Fox, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Samuel H. Levy, E. E. Angevine, Sp. Assts. to the Atty. Gen., Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, MAGRUDER, and JONES, Circuit Judges.

JONES, Circuit Judge.

The Pennsylvania Company for Insurances on Lives and Granting Annuities, trustee under an agreement with the Capital Savings Plan, Inc., and the holders of contract certificates issued thereunder, sued to recover from the United States certain payments made by the trustee on account of income and excess profits taxes for the calendar years 1936 and 1938 and capital stock taxes for the fiscal years ending June 30, 1935 to 1938, both inclusive. As trustee under a like agreement with the Wellington Foundation, Inc., and the holders of certificates issued thereunder, it also sued to recover certain payments made by it on account of income taxes for the calendar year 1940 and capital stock taxes for the years 1937 to 1940, both inclusive. The two cases were tried to the District Court upon stipulated facts. The court entered judgment for the defendant in each case, from which the plaintiff took the pending ap-

peals. The legal question being the same in both cases, the appeals were briefed and argued together and will be disposed of in one opinion.

The question involved is whether the trusts under consideration are pure trusts or associations taxable as corporations within the meaning of the Revenue Acts. The provisions of the Revenue Acts pertinent to both cases are Sec. 1001(a) (2) of the Revenue Act of 1936 and Sec. 901 (a) (2) of the Revenue Act of 1938, and also, in the case of the Wellington Foundation, Inc., trust, § 3797(a) (3) of the Internal Revenue Code, each of which defines the term "corporation" as used in the particular Act as including "associations, joint-stock companies, and insurance companies".[1] The facts which give rise to the question to be considered are both extensive and detailed and need be summarized in material part.

The Pennsylvania Company for Insurances on Lives and Granting Annuities (hereinafter referred to as Pennsylvania Company) is a bank and trust company organized and existing under the laws of Pennsylvania and having its principal office and place of business in Philadelphia.

Capital Savings Plan, Inc. (hereinafter referred to as Capital) is likewise a Pennsylvania corporation. Its business embraces the issuance and distribution of its savings plans to members of the public under any one of three trust agreements, one of which is now before us. Subsequent to the tax years involved in the case of the Capital trust, to wit, on December 31, 1938, Capital was merged with Independence Shares Corporation (hereinafter referred to as Independence), also a Pennsylvania corporation. Independence is an investment trust. Its trust shares were sold by Capital as vendor or dealer through the trustee to holders of Capital savings plans. Since the merger Independence has continued to furnish trust shares for the purpose of the plans but has not issued or distributed any of Capital's savings plans.

Both Capital and Independence have also purchased trust shares which were required to be sold pursuant to the direction of planholders and have resold such shares to other planholders through the trustee.

Wellington Foundation, Inc. (hereinafter referred to as Wellington), is a Delaware corporation, also engaged in the business of issuing and distributing to members of the public its plans under its agreement with the trustee.

The trust agreements in the case of both Capital and Wellington are in the form of an undertaking between the distributor of the plans (Capital or Wellington, as the case may be), the trustee (Pennsylvania Company), and members of the public who became parties thereto by acquiring plans. A prospective planholder first signs an application for a plan acceptable to the distributor and to the trustee and accompanies his application with his first payment, either periodic or in full, depending upon the plan selected. Upon the distributor's acceptance of the application and the trustee's approval thereof, a contract certificate in the case of the Capital savings plan and a certificate in the case of the Wellington plan is issued to the planholder.

The certificates issued under the trust agreements are of three types, viz., (1) those under which the investor agrees to make 120 monthly payments (usually $10 per month) without insurance benefits, (2) same as type (1) but with insurance benefits, and (3) fully paid contract certificates.

Upon issuance of the approved contract certificate in the case of Capital or the certificate in the case of Wellington, the trustee enters on its registry the name of the investor for whom a separate account is opened by the trustee. Certain authorized deductions (for services, etc.) are made by the trustee from the amount paid in by the purchasers of the plans and the balance of such payments is applied, under the Capital plan, to the purchase of Independence Trust shares or, under the Wellington plan,

---

[1] Sec. 1001 (a) (2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 971 and Sec. 901 (a) (2) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1161, each provide that,—

"(a) When used in this Act—

\* \* \* \* \*

"(2) The term 'corporation' includes associations, joint-stock companies, and insurance companies."

§ 3797 (a) (3) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3797 (a) (3), provides that,—

"(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

\* \* \* \*

"(3) Corporation. The term 'corporation' includes associations, joint-stock companies, and insurance companies."

872

shares of the Wellington Fund, Inc., an investment trust. Concurrently the trustee records on the individual investor's "account card" the number of shares purchased for him and also records the balance of the trust shares then held for the investor. The trustee's practice has at all times been to purchase on each business day with the funds available from payments and distributions received, after making the authorized deductions, the number of trust shares which could be purchased with the funds at the asked price for the trust shares in effect on the date of purchase.

In the periodic payment plan neither the trustee nor the distributor has any right to terminate the plan of any planholder so long as he makes his periodic payments when due. The planholder, however, is not bound to continue making payments for the full period of his plan. He may, under either the periodic or the full payment plan, terminate his plan at any time and receive at his option all of the shares purchased for him to date or the proceeds of the sale thereof.

After the planholder has completed all of his payments, he can, under the Capital plan, require the administration of the plan for ten more years and, under the Wellington plan, for a period of twenty-five years from its original date. Thus, the Capital plan contemplates a ten to twenty year term, and the Wellington plan a ten to twenty-five year term.

Once the plan is issued, neither the planholder, nor the distributor, nor the trustee can disturb the trusteeship except in the case of default under the periodic plan or in the very remote contingency under the Wellington plan that the present trustee becomes incapable of acting or has its affairs taken over by a governmental agency.

Under the fully paid Capital plan the planholder has the right to require the trustee to pay him the dividends received by the trustee instead of having the trustee reinvest them in additional shares. Under the periodic payment plan the dividends are reinvested in additional shares. Under the Wellington plan the dividends are distributed currently to the planholders unless they direct otherwise.

Under the Capital plan the shares specified for investment by the trustee are Independence Trust shares, which, as already

indicated, are shares of an investment trust, being of the fixed or deposit unit type. The distributor may substitute for purchase by the trustee "* * * shares of a similar fixed investment trust having underlying securities of a standard nature and diversified in character, which said underlying securities are reasonably comparable to the securities underlying said Independence Trust Shares * * *."[2] The power so to substitute becomes exercisable when Independence Trust shares are not available or their purchase is impracticable. In such event receipts of banks, trust companies, or banking institutions, or certificates of deposit or of interest or of participation issued by banks, trust companies, or banking institutions evidencing a deposit of or representing blocks of underlying securities comparable to the securities underlying Independence Trust shares may be substituted by the distributor.[3]

If the distributor fails or refuses for a period of sixty days to provide other trust shares for the trustee's purchase and Independence Trust shares are not available for purchase, or, if available, are purchaseable only at a price which the trustee deems unreasonable, then the trustee may elect to exercise the power of substitution. If that be done, it is necessary for the planholders to consent to the trustee's proposed action within thirty days of notice thereof. Failing such consent, no substitution of shares can be made for those not consenting and their contract certificates become subject to termination in accordance with the trust agreement.[4]

The specified investments under the Wellington plan are shares of the Wellington Fund, Inc., an investment trust incorporated under the laws of Delaware, wholly separate and distinct from Wellington Foundation, Inc. The Wellington Foundation trust agreement provides that "* * * the Foundation may, at any time, at its option, substitute for Trust Shares * * * (either * * * theretofore delivered * * * or * * * thereafter to be acquired * * * or both) Trust Shares or other divisible interests of any investment trust (incorporated or unincorporated) having securities in its portfolio of marketable and diversified character, such securities being reasonably comparable to those in the portfolio of Fund, or in case such Trust

---

[2] Art. VI, Sec. 1, Capital Savings Plan Trust Agreement.
[3] Ibid.

[4] Art. VIII, Secs. 2 and 3, Capital Savings Plan Trust Agreement.

Shares are not available or the purchase of them is impracticable, such other Trust Shares or interests as in the opinion of Foundation will supply the Holders with Trust Shares of reasonable security and income producing characteristics, provided that in no case shall additions, deductions, or expenses be charged by reason of any such substitution."[5] Before any such substitution can be made, the planholder must be given thirty days' notice of intention thereof within which time he may withdraw. Planholders who do not notify the trustee within that period of their desire to withdraw are conclusively deemed to have authorized such substitution. There is also a provision which authorizes the trustee, upon Wellington's failure to furnish adequate source of shares purchaseable by the trustee and its further failure to notify the trustee of its intention to substitute shares, to purchase other comparable trust shares after certain notice to the holders of certificates.[6]

The substitution provisions have never been exercised in the case of either trust.

The plans under both trusts may be assigned, but the assignees must be approved by the trustee and they must agree to be bound by the terms of the plans assigned to them.

Purchasers of plans have no voting rights and the trust agreements make no provision for meetings or common representation of the planholders. The duties of the trustee are carried out under the supervision of one of its vice-presidents who for the purpose of the trustee's services uses the regular business stationery of the Pennsylvania Company. The trustee keeps various books of account necessary in its administration of the trusts.

█ The criteria for determining whether a trust is an "association" taxable as a corporation within the meaning of the Revenue Acts were spelled out and discussed in the case of Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, which was followed in three accompanying cases decided by the Supreme Court the same day: Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275; and Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S. Ct. 285, 80 L.Ed. 278. It was observed, however, in the Morrissey case, page 356 of 296 U.S., page 295 of 56 S.Ct., 80 L.Ed. 263, that "* * * it is impossible in the nature of things to translate the statutory concept of 'association' into a particularity of detail that would fix the status of every sort of enterprise or organization which ingenuity may create, * * *." By the same token, the absence of one or more of the indicia which have been held to determine that a certain status is that of an "association" within the meaning of the Revenue Acts does not determine that a particular enterprise is not such an "association". In last analysis, the question in any instance is as to the scope of the legislative intent.

█ Certain it is that the term "associations", as employed in the Revenue Acts in the connection here under consideration, embraces "business trusts". See Morrissey v. Commissioner and other cases cited supra. The fact that the cases just referred to were concerned with the cognate provisions in the Revenue Acts of 1924, 1926 and 1928 is of no materiality, for the definition of the term "corporation" as including, inter alia, "associations" was the same in those Acts as it is in the ones here applicable and as it has been ever since the Revenue Act of 1917. What Congress did not intend to embrace within the term "associations" were pure trusts, that is, trusts of traditional pattern where property is conveyed by will, deed, or declaration to a trustee or is to be retained by the settlor on specified trusts for a certain term for the benefit of named or described persons. Cf. Morrissey v. Commissioner, supra, 296 U.S. at pages 356, 357, 56 S.Ct. 289, 80 L. Ed. 263.

█ In determining whether a particular trust is a business trust and, hence, an association within the meaning of the Revenue Acts, the fact that in its powers and purposes it resembles a pure trust is of course relevant. But that does not mean that a trust which presents one or more of the elements usually attending a pure trust is ipso facto not a business trust. Some of the characteristics of a pure trust may be present in certain circumstances for a "business" purpose as distinguished from a "trust" purpose. Under the Morrissey case the test primarily is the similarity of the benefits and privileges enjoyed by virtue of the trust when compared with those afforded by the use of the corporate forms.

---

[5] Art. VI, Sec. 6.01, Wellington Foundation, Inc., Trust Agreement.

[6] Art. VI, Sec. 6.04, Wellington Foundation, Inc., Trust Agreement.

■■ Nor does the fact that the analogy between a particular trust, in respect of its creation and organization, and a. corporation is not complete determine that the trust is not an association taxable as a corporation. In the Morrissey case, supra, it was said (page 358 of 296 U.S., page 295 of 56 S.Ct., 80 L.Ed. 263) that "While the use of corporate forms may furnish persuasive evidence of the existence of an association, the absence of particular forms, or of the usual terminology of corporations, cannot be regarded as decisive." The question of the taxability of a trust as an association does not turn merely upon technical differences between the trust and a corporation in respect of their organizational structures. The determinant is rather the approximation of corporate advantages by the use of a trust instead of a corporation. See Fidelity-Bankers Trust Co. v. Helvering, 72 App.D.C. 1, 113 F.2d 14, 17. We think it is clear that the trusts now under consideration sufficiently satisfy the quasi-corporate form test regardless of the differences that may be pointed out in the manner of their creation and organization. Cf. Commissioner v. North American Bond Trust, 2 Cir., 122 F.2d 545, 546; Hamilton Depositors Corp. v. Nicholas, 10 Cir., 111 F.2d 385, 386.

In the Morrissey case the Supreme Court listed five attributes afforded by corporate organization which, when found in a trust, are sufficient to characterize it as an association within the meaning of the Revenue Acts, viz., (1) a continuing entity as holder of the legal title to the trust res, (2) centralized management through the trustee, (3) security from termination or interruption by reason of the death of owners of beneficial interests, (4) the facilitation of the transfer of beneficial interests and the introduction of large numbers of participants without affecting the continuity of the enterprise, and (5) the limitation of the liability of participants to the property embraced in the undertaking. All of these attributes are to be found in the trusts here involved.

■ Furthermore, under the trust agreements in the instant cases the distributor (Capital or Wellington) has the right to substitute for purchase by the trustee securities other than the trust shares specifically designated for investment in the trust agreements. In this alone, the court below saw sufficient of a business purpose to constitute the trusts associations taxable as corporations. The appellant answers that the power of substitution is a normal incident of a pure trust and usually necessary for the preservation of the trust property. So much may be conceded, but that is not the present situation. Here the power of substitution is primarily in the distributor, which is the vendor of the shares to be made subject to the trust. And that power may be exercised by the distributor if it finds it "impracticable", when the trustee has funds for investment, to provide the specified trust shares for purchase. Moreover, if the distributor fails to provide the trustee with shares for purchase, then the trustee may exercise the power of substitution and, in so doing, has the right to be influenced in its choice of securities by the price at which the specified trust shares are then procurable. It is indeed difficult to perceive for what reason, other than the obvious business reason involved, this power of substitution was reposed. Nor is it important that the power has never been exercised. The matter is to be adjudged not by what has been done but by what can be done under the arrangement. In Commissioner v. North American Bond Trust, loc. cit. supra, a power in the distributor to change in its discretion the investments to be made by the trustee, coupled with the right in the beneficiaries to sell out or terminate their interests in the trust, was held to make the undertaking an association within the meaning of the Revenue Acts.

On the other hand, there is little, if anything, in connection with the present trusts, other than the trustee's title and its custodial services, to suggest the presence of a traditional trust. The distributor is not a settlor. It is simply the vendor of its own trust shares. The funds for the purchase of what is designed to become the trust res are supplied by the planholders (i e., the beneficiaries). The trustee is merely the purchaser of specified or substituted trust shares when provided by the distributor for purchase by the trustee. The beneficiaries are entitled to take down their interests in the trust at any time they see fit even to the point of exhausting the res while the trustee remains helpless to maintain or preserve the trust estate intact. Substantially, the planholders are but the purchasers of trust shares through the instrumentality of a trustee (or agent); and, in view of the beneficiaries' power to possess themselves of the trust property to the extent of their several interests, the trustee is little more than a custodian of the beneficiaries' in-

vestments for so long as they choose to leave their property in the trustee's possession.

The facts in the instant cases justify the conclusions that the trust device was adopted and has been used to facilitate the distributors' sales of their trust shares among many small investors whose net aggregated contributions are utilized by the trustee from day to day for that purpose and that the participation by the beneficiaries as investors in trust shares, through the medium of the trustee, is in the hope of a return by way of dividends and of gain through the possible enhancement in the value of the trust shares. Their participation can hardly be said to be for the achievement of the security and preservation of property ordinarily afforded by a trust.

In Equitable Trust Co. v. Magruder, D. C.Md., 37 F.Supp. 711, upon which the appellant relies heavily, the court in holding that the trust there involved was not an association arrived at its conclusion by treating the trustee as the sole party necessary to the functioning of the trust and as not being in association with anyone. We do not think that the facts in the instant cases warrant a like conclusion. Here, the participation of the beneficiaries is essential to the operation of the trust which, moreover, is controlled or controllable in an important particular by the distributor according to its business purposes and motives. Furthermore, there was no power of substitution in the discretion of the distributor in the Equitable Trust case such as there is in the present instances. Cf. Commissioner v. North American Bond Trust, supra.

The case of A. A. Lewis & Co. v. Commissioner, 301 U.S. 385, page 388, 57 S.Ct. 799, 81 L.Ed. 1174, is fully distinguished from the Morrissey case by the Supreme Court and calls for no further comment by us. City Bank Farmers Trust Co. v. Helvering, 313 U.S. 121, 61 S.Ct. 896, 85 L.Ed. 1227, United States v. Pyne, 313 U.S. 127, 61 S.Ct. 893, 85 L.Ed. 1231, and similar cases which hold that the performance by a trustee of his usual and ordinary trust functions does not constitute doing business, do not bear on the facts of the present cases. And the same may be said for the cases which classify liquidating trusts as pure trusts even though the trustees may necessarily be required to engage in business operations to some extent in the proper administration of their trusts.

 It is our opinion that the trusts here involved are "associations" within the meaning of the Revenue Acts and, as such, are taxable as corporations.

The judgment of the District Court in each of the cases appealed is affirmed.