**PENNSYLVANIA CO. FOR INSURANCES ON LIVES AND GRANTING ANNUITIES v. UNITED STATES (two cases).**

**Nos. 8277, 8278.**

Circuit Court of Appeals, Third Circuit.

Argued April 17, 1944.

Decided Dec. 21, 1944.

---

See also 138 F.2d 869.

Carlton Fox, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellant.

Francis H. Bohlen, Jr., of Philadelphia, Pa. (Saul, Ewing, Remick & Harrison, of Philadelphia, Pa., on the brief), for appellees.

Before JONES, GOODRICH, and McLAUGHLIN, Circuit Judges.

JONES, Circuit Judge.

These appeals grow out of suits for the recovery of tax payments made for certain years by the plaintiff-trustee under protest. Neither the amounts of the payments nor the character of the taxes for which the assessments had been made need be stated with particularity. The question involved in both appeals concerns the legislative intent of a provision in the Revenue Acts under which the taxes were imposed.[1] Specifically, each of the applicable statutes provides that "The term 'corporation' includes associations, joint-stock companies, and insurance companies."[2]

The question here presented is whether the particular trusts involved in the instant suits (which were tried together below) qualify as associations within the intent of the Revenue Acts so as to render them taxable as corporations. The trial court held that the trusts were pure trusts and were, therefore, not taxable. Accordingly, the court entered appropriate judgments for the plaintiff-trustee from which the Government appeals. Both appeals will be dealt with in this one opinion.

The trusts involved are what are usually termed investment trusts. The creators of the trusts (in the one case, the Independence Shares Corporation, and, in the other, Bank and Insurance Shares, Inc.) each deposited with The Pennsylvania Company for Insurances on Lives and Granting Annuities, as trustee, under respective agreements and deeds of trust, certain shares of the common stock of designated corporations. Against the deposited shares (grouped as units) certificates evidencing participating interests in a group of the deposited shares, as specifically identified on the back of the trust certificates, were issued by the trustee to the depositor which sold them to the public. The trust certificates were in registered form and were transferable by the registered holders thereof. The stock certificates for the specified shares (composing the deposit units) and any other securities deposited with the trustee were held in the name of the trustee which received all income and proceeds therefrom.

Under the agreement and deed of trust in the case of the Independence Shares Corporation, the trustee was empowered to dispose of deposited stock only upon written notice from the depositor. Such notice could be given, in the discretion of the depositor, only if (1) any one or more of the companies (stock wherein helped make up a deposit unit) failed to pay a usual dividend on its stock or (2) " * * * if, at any time, the Depositor should receive information that in its opinion would warrant the conclusion that the stock of any such Company may or will become substantially impaired in value, * * * " or (3) "In case any event shall occur not specified in the provisions of this Agreement, requiring the exercise of discretion in the administration of the Deposit Units, the Trustee shall take such action with respect thereto as the Depositor, in its absolute discretion, shall direct in writing * * *." The Independence Shares agreement also authorized the trustee to sell or convert deposited trust shares in any company which split up its common stock or

---

[1] The Revenue Act applicable to the tax year involved in the case of the Independence Shares Corporation trust is the Revenue Act of 1936, while in the case of Bank and Insurance Shares, Inc. trust the Acts applicable to the tax years there involved are the Revenue Act of 1938 and the Internal Revenue Code.

[2] See Sec. 1001(a) (2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 971; Sec. 901(a) (2) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev. Acts, page 1161; and Sec. 3797(a) (3) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3797(a) (3).

in any of such companies that became party to a corporate merger or consolidation. As a result of one or more of the above provisions, certain of the deposited stocks were eliminated from the Independence Shares trust but no other stocks were ever added thereto or substituted for the designated trust shares.

Distributions of income from the deposited shares, after payment of certain expenses, were made semiannually by the trustee to the trust certificate holders and, on the date provided for the termination of the trust, the trustee was to make final distribution, to the trust certificate holders, of the cash proceeds after liquidation or sale of all of the securities remaining in the trust.

The holders of the trust certificates had the following rights under the trust agreement: (1) To receive semiannual distributions of income and final distributions of corpus, (2) to convert a trust certificate into its proportionate interest in the shares of deposited stock then constituting the cognate unit, plus a cash equivalent for the proportional interest in the residual cash for distribution in the unit, and (3) to receive in cash the redemption value of a trust certificate upon its surrender for redemption. The holders of the trust certificates had no voting rights nor was there any provision for meetings of the trust certificate holders.

The liability of the depositor and the trustee was limited to acts of willful malfeasance or gross negligence. The trust had no directors, officers or employees. Nor had it any office, stationery, seal or minute book. The trust was administered by its trustee (a Pennsylvania corporation) which was authorized by its charter to accept and discharge the duties of a trustee. The agreement also provided for the substitution of a trustee in certain presently immaterial contingencies and for the succession of the substituted trustee to all rights, powers and duties devolving upon the trustee under the agreement with respect to the deposited property.

The provisions of the agreement and deed of trust between Bank and Insurance Shares, Inc., as depositor, and The Pennsylvania Company etc., as trustee, do not differ materially from those in the case of Independence Shares Corporation as above set forth. Under the terms of the Bank and Insurance Shares, Inc. agreement, participating trust certificates were to be issued by the trustee for each 500-share unit of stock in certain designated New York banks and trust companies which the depositor was to deposit with the trustee. The composition of the deposit unit could be changed by the depositor only "If, at any time, any Company, any of whose stock is included in a unit or units held by the Trustee hereunder, shall liquidate voluntarily or otherwise, or if a Receiver be appointed for a substantial portion of its property, or if it shall fail for one year to pay any dividend on such stock, or if, at any time, the Depositor shall receive information that in its opinion would warrant the conclusion that the stock of any such Company may or will become substantially impaired in value, or if in the opinion of the Depositor the stock of any such Company is not reasonably obtainable to complete additional units, then the Depositor shall have the right but not the obligation in accordance with its sole discretion and judgment to instruct the Trustee to sell such stock * * *." Under the foregoing provision, certain shares of stock were from time to time eliminated from the Bank and Insurance Shares trust but no other shares of stock were ever added thereto or substituted for the designated trust shares.

■■■ A business trust constitutes an association within the meaning of the pertinent Revenue Acts and, as such, is taxable the same as a corporation. See Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, and the three companion cases decided the same day: Swanson v. Commissioner of Internal Revenue, 296 U.S. 362, 56 S.Ct. 283, 80 L. Ed. 273; Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275; and Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278. The Morrissey case laid down five criteria for ascertaining the presence of the attributes which go to make a trust a business undertaking. However, "The inclusion of associations with corporations implies resemblance; but it is resemblance and not identity." Morrissey v. Commissioner of Internal Revenue, supra, 296 U.S. at page 357, 56 S.Ct. at page 295, 80 L.Ed. 263. Basic to the pertinency of corporate attributes in connection with a trust is the requirement that the trust was organized, or is capable of being utilized, "to enable the participants to carry on a business and divide the gains which accrue from their

common undertaking." Morrissey v. Commissioner of Internal Revenue, supra, 296 U.S. at page 360, 56 S.Ct. at page 296, 80 L.Ed. 263.

Ordinarily whether a trust is a taxable association depends upon whether it is or can be used for the promotion of business purposes as distinguished from ordinary trust purposes. See Pennsylvania Company for Insurances on Lives etc. v. United States, 3 Cir., 138 F.2d 869; Commissioner of Internal Revenue v. Buckley, 9 Cir., 128 F.2d 124; Commissioner of Internal Revenue v. Chase National Bank, 2 Cir., 122 F.2d 540, 144 A.L.R. 1043; Commissioner of Internal Revenue v. North American Bond Trust, 2 Cir., 122 F.2d 545.

In Pennsylvania Company for Insurances on Lives etc. v. United States, supra, we held the trusts there involved to be taxable associations. It is the Government's contention that our decision in that case requires that the trusts in the instant cases be likewise held to be associations. With that, we are unable to agree. In the cited case, the depositors had the right under the trust agreements (see 138 F.2d at page 874) "to substitute for purchase by the trustee securities other than the trust shares specifically designated for investment in the trust agreements." That this power fastened a business purpose upon the subject trusts, we sought to indicate when we said (138 F.2d at page 874) that "It is indeed difficult to perceive for what reason, other than the obvious business reason involved, this power of substitution was reposed." By virtue of that power, the depositors were able to take advantage of "swings in the market" and, virtually, to use the trusts for the purpose of trading in securities in the hope of gain. Nor was it deemed important that the power had never been exercised. "The matter is to be adjudged not by what has been done but by what can be done under the arrangement." 138 F.2d at page 874. Cf. also Morrissey v. Commissioner of Internal Revenue, supra, 296 U.S. at page 361, 56 S.Ct. 289, 80 L.Ed. 263; Swanson v. Commissioner of Internal Revenue, supra, at p. 365; and Porter v. Commissioner of Internal Revenue, 9 Cir., 130 F.2d 276, 279.

Under the trust agreements in the instant cases there is no power in anyone to substitute for the trust res at any time. The trust investments became fixed upon the deposit of the specified share units with the trustee prior to the issuance of the trust certificates against them. Never thereafter could the trust investments be changed or varied except that, in certain events, deposited shares could be eliminated from the trusts—a power that was essential to the preservation of the corpus. The trustee received and held the deposited shares for ordinary trust purposes, i. e., of preserving and safeguarding the corpus and of paying to the certificate holders according to their respective participating interests the net income from the trusts semiannually and the corpus itself upon the termination of the trusts.

The distinction which we thus indicate between a fixed investment trust and a trust susceptible of being used for the production of gain through business transactions, such as trading in securities, is exemplified by the decided cases. In Commissioner of Internal Revenue v. North American Bond Trust, supra, where the depositor had the power to change, in its discretion, the trust investment, the trust was held to be an association and, therefore, taxable. But, in Commissioner of Internal Revenue v. Chase National Bank, supra, decided by the same court on the same day as the North American Bond case, the trust agreement did not vest in the depositor power to change the trust investments and, accordingly, the trust was held not to be an association. Again, in Commissioner of Internal Revenue v. Buckley, supra, the Court of Appeals for the Ninth Circuit followed the decision in the Chase National Bank case, supra, and, in so doing, emphasized that "There was no authority to purchase or substitute the stock of corporations other than those included in the original deposit." [128 F.2d 125.]

It is also worthy of note that in the cases where trusts have been held to be associations there was evident a business purpose above and beyond the trustee's management, control and preservation of trust property and the distribution of the income therefrom to the beneficiaries. In Hamilton Depositors Corporation v. Nicholas, 10 Cir., 111 F.2d 385, 387, the depositor had "large supervisory and directory powers over the trustee, directing the trustee in the management, investment and handling of the property." When the Hamilton Depositors trust again came before the Court of Appeals for the Tenth Circuit in Commissioner of Internal Revenue v. City Nat. Bank & Trust Co., 142

F.2d 771, the court said on page 776 that "The trust clearly was engaged in the business of buying and selling securities for income and profit for its members." Again, in Porter v. Commissioner of Internal Revenue, supra, one of the expressed purposes of the trust, according to the instrument creating it, was "to engage in any lawful business" in order to realize a gain or profit to the trust estate—a circumstance which the court stressed (130 F.2d at page 280) in holding that the trust was a taxable association. No such statements of business purpose for the trusts are in evidence in the instant cases. And, particularly, the trusts were not permissibly capable of being used to buy and sell securities for gain.

It is, therefore, our opinion that the learned trial judge correctly held the trusts now under consideration to be pure trusts and, consequently, not taxable.

The judgments of the District Court are affirmed.