### COMMISSIONER OF INTERNAL REVENUE v. UNITED STATES & FOREIGN SECURITIES CORPORATION.

#### No. 8637.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 8, 1944.

Decided March 22, 1945.

744

S. Dee Hanson, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Charles C. Parlin, of New York City (Wright, Gordon, Zachry, Parlin & Cahill, and J. Reid Hambrick, of New York City, on the brief), for respondent.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and GANEY, District Judge.

GANEY, District Judge.

This is an appeal from the Board of Tax Appeals and concerns the question of the cost basis of certain Seaboard Air Line Railway Company securities sold by the petitioner during the taxable years 1935 to 1937. The petitioner was one of a number of participants who formed a syndicate to buy, sell, trade and deal in securities of the Seaboard Air Line Railway Company. The petitioner and other participants formed the syndicate believing that by simplifying the capital structure of the Seaboard Air Line Railway Company, and improving its position through a reduction of the funded debt and interest charges by getting additional capital from the sale of common stock, and also by the injection of new man-

agement blood, there would be an appreciation in the value of the Seaboard securities.

The securities in question were received by the petitioner as a distribution, in kind, in 1931 and 1935 upon the termination of the syndicate. The petitioner claims that the syndicate agreement created a principal-agent relationship (or a "partnership") and therefore the cost basis was the actual cost of the securities to the syndicate, while the government maintains that the syndicate agreement created some other type of relationship which it calls an "association", and that the cost basis was accordingly the fair market value at the date of their receipt.

The question on appeal is, therefore, whether the syndicate agreement created an "association" within the intendment of the Revenue Acts so as to make it taxable as a corporation. If it was not an association the basis of the securities for gain or loss are determinable in accordance with the provisions of Sec. 113(a) (13) of the Revenue Acts of 1934 and 1936, 26 U.S.C.A. Int.Rev.Acts, pages 700, 864.[1]

▮ A business trust constitutes an association within the meaning of the Revenue Acts and is taxable the same as a corporation. Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Swanson et al. v. Commissioner of Internal Revenue, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; Helvering v. Combs et al., 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275. In the Morrissey case, supra, the court laid down five criteria for determining whether a trust is a business undertaking. Whether a trust has the attributes of a corporation, is to be determined by resemblance thereto rather than by identity therewith, and the basis of this determination is whether the trust was organized "to enable the participants to carry on a business and divide the gains which accrue from their common undertakings * * *." Morrissey Case, supra, 296 U.S. at page

1 "Sec. 113. Adjusted Basis for Determining Gain or Loss.

"(a) Basis (Unadjusted) of Property. The basis of property shall be the cost of such property; except that * * *

"(13) Partnerships. If the property was acquired, after February 28, 1913, by a partnership and the basis is not otherwise determined under any of the paragraphs (1) to (12), inclusive, of this subsection, then the basis shall be the same as it would be in the hands of the

transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. If the property was distributed in kind by a partnership to any partner, the basis of such property in the hands of the partner shall be such part of the basis in his hands of his partnership interest as is properly allocable to such property."

360, 56 S.Ct. at page 296, 80 L.Ed. 263. In applying the tests laid down in the Morrissey, supra, to the syndicate agreement, it must be found that an "association" was not created and the findings of the Tax Court sustained.

The only assets held by the managers of the syndicate consisted of the securities of the Seaboard Air Line Railway Company and affiliated companies. It had no bank account with any commercial bank, and in making repayments of bank loans, the managers always used separate checks of the individual participants. It never had a seal or a license to deal in securities and the managers merely acted as agents for common principals. The participants lacked control over the management and there was no provisions in the agreement for the removal of the management or substitution of new managers, and the participants in nowise had the control over the managers such as stockholders do over a board of directors. Further the syndicate was organized November 30, 1928 and was to continue for six months until May 30, 1929, with the provision that it might be extended for one or more successive periods of six months each by notice from the managers to the participants, which was done for four such periods, the last extension being to May 30, 1931. However, it was also provided that the syndicate might be terminated at any time by the managers in their discretion, and accordingly its duration might have been less that the stipulated period of six months. No certificate of participation or any document having the character of a security or other evidence of beneficial interest in the agreement or in the assets was ever issued. The participant's liability was not limited to the amount of his subscription as is the liability of a stockholder of an ordinary corporation, as the participants under the syndicate agreement were expressly made liable for the expenses of the syndicate.[2]

The syndicate itself never had any employees, the work being done on the premises and by the employees of Dillon, Read & Company, one of the syndicate managers, and while the managers could meet from time to time to decide matters entrusted to their decision under the terms of the agreement, there was never any meetings called or held by the parties to the agreement. In addition the participant had no absolute right to assign his interest therein, since Paragraph 13 of the agreement conferred upon the managers the right "in their sole discretion" to release a participant and substitute another satisfactory to the managers, provided that such substituted participant assumed the obligations of such released participant.

A thorough analysis of the syndicate agreement convinces us that there was in evidence no business purpose above and beyond the managers' attempt to better the position of the Seaboard Air Line Railway Company securities and in the control and operation thereof to work an appreciation in their value. Such a business purpose has been found requisite in those trusts, which have been held to be "associations". Pennsylvania Company for Insurances on Lives and Granting Annuities v. United States, 3 Cir., 1944, 146 F.2d 392. There was no "large supervisory and directory powers over the trustee, directing the trustee in the management, investment and handling of the property" as was set out in Hamilton Depositors Corporation v. Nicholas, 10 Cir., 111 F.2d 385, 387. The case of Pennsylvania Company for Insurances etc., v. United States, 3 Cir., 138 F.2d 869, 874, has been cited by counsel for the government as decisive of the question here at issue. With this contention we are unable to agree. In that case the depositors had the right under the trust agreement "to substitute for purchase by the trustee securities other than the trust shares specifically designated for investment in the trust agreements", and we there held that this power fastened a business purpose upon the subject trusts, as it was deemed difficult to see any other than a business reason for this

[2] " * * * The Managers may, for account of the Syndicate, incur any expenses deemed by them appropriate, pay all commissions and/or other expenses of every nature and purchase, sell, sell short, repurchase, resell and/or hold securities to such amounts at such prices, and in such manner, as the Managers may deem advisable, and generally may act in all respects as in their opinion may be to the best interests of the Syndicate, provided only, that the Syndicate shall never at any time be committed for a net long position in excess of the total participations in the Syndicate and/or be chargeable for a net short position in excess of twenty-five percent (25%) of the total participation in the Syndicate."

right of substitution. In the instant case there is no such power of substitution since the managers had no authority to acquire any securities other than those of Seaboard Air Line Railway Company and its affiliated companies, a finding to this effect having been made by the Tax Court.

We can nowhere find in the syndicate agreement any underlying business reason for its existence, and hence hold that the agreement did not create an "association" within the meaning of the Revenue Acts and that the petitioner's cost basis of the securities was the actual cost of the securities to the syndicate.

The decision appealed from will accordingly be affirmed.